In the Matter of the Estate of MATTHEW BYRNES, Deceased.

Surrogate's Court, New York County, April 16, 1936.

*Carl H. Fowler*, for the substituted trustee, Empire Trust Company.

*George F. Mara*, special guardian for infants.

*Robert H. Law, Jr.*, for Matthew B. Byrnes.

*Hogan & Ramirez*, for Ida von Claussen.

*Kelley & Becker*, for Jane B. O'Malley-Keyes.

*Rufus M. Overlander*, for Arthur Wellington Malley.

*Seligsberg & Lewis*, for Edward Hamilton Malley and Constance Malley Armstrong.

DELEHANTY, S. The trustee now accounting was appointed on April 19, 1918, and the account now rendered covers the period from that date to September 21, 1933. The account was ordered by this court over objection of the trustee and on application of one of the income beneficiaries. Following the order compelling the filing of an account the trustee filed a voluntary account with a petition for its settlement. The two proceedings were thereupon consolidated. Objections to the account were filed. Because of the importance and extent of the questions raised and the fact that the account covered a lengthy period the court referred the matter to a referee. His report is now before the court. Various beneficiaries excepted to that report. All of such exceptions filed by persons representing seven-eighths in interest in the trust have been withdrawn pursuant to the terms of an agreement of settlement entered into between the trustee and these beneficiaries. The beneficiary representing the remaining one-eighth interest presses her exceptions. The trustee likewise filed exceptions to a portion of the findings and conclusions of the referee.

The tenor of the exceptions required the court to read the voluminous record including the testimony and the exhibits. The court notes the painstaking care with which the referee conducted the proceedings and his maintenance throughout the hearings of an entirely judicial attitude toward the parties and the subject-matter of their objections despite unusual difficulties.

The major question raised by the trustee has to do with its commissions. The subject is said by the trustee to be of impor-

tance to fiduciaries generally. From a scrutiny of the business passing through the court it is aware that the position now taken by the trustee in respect of its right to commissions may, in the case of trusts comprised in large part of real estate, operate to limit .markedly the income receivable by beneficiaries of such trusts. In such circumstances something more than a perfunctory discussion of the question seems appropriate.

An understanding of the points involved in the exceptions to the referee's report filed by the respective parties requires a brief history of the rea property which is in this trust. When this trustee took charge of the property the premises were operated as a hotel. Shortly after the fiduciary took charge the Supreme Court, on proper application, approved the making by the fiduciary of a long term lease of the entire premises under which the lessee obtained the right to convert the building into a store and office building. This conversion was made and thereafter the building was operated by the tenant who paid the taxes and all operating charges and remitted a net lease rental to the trustee. Out of it the trustee had to pay. mortgage interest. The trustee charged five per cent on the rental so paid by the tenant during the period when the premises were so occupied by a single tenant. For reasons not important on this branch of the controversy, the lease eventually was terminated and the trustee took over the management of the property itself. Thenceforth the trustee collected the rents from the property and out of the gross collections paid the maintenance or housekeeping charges, the insurance, the taxes, the water charges and the mortgage interest. In the course of its operation of the premises the trustee made leases o: the premises through the intervention of independent brokers to whom the trustee paid brokerage commissions.

The trustee asserts the right to charge what it calls a five per per cent " commission " upon the gross rents so received while it was operating the premises: No one disputes that right. The trustee asserts the further right to charge the regular two per cent commission upon the same gross rents and upon expenditures in the management of the building. This is disputed. The referee ruled partly against the trustee's claim and recast the account accordingly. To this ruling the trustee excepted. The trustee charged as an ordinary building expense the cost of brokerage fees paid out by it for the making of leases. The referee ruled that such expense is not deductible by the trustee but must be absorbed by it in the five per cent deducted from gross rents. The trustee has excepted to this ruling. These differences in viewpoint formulate the problem for solution so far as the exceptions of the trustee are concerned.

It should be noted first that in its literal text section 285 of the Surrogate's Court Act uses the words " all sums of money " in fixing the base on which commissions are computed. At an early date the courts interpreted that phrase. *Beard* v. *Beard* (140 N. Y. 260, 265) is a leading authority. It held that the commissions to be paid for receiving and paying out estate funds are to be computed (so far as receiving commissions are concerned) on " all moneys which constitute the *corpus* of the estate " and are to be computed (so far as paying out commissions are concerned) on " the moneys paid out of the estate for debts, expenses of administration and to legatees or other beneficiaries, *moneys which operate to diminish the estate as it exists in the hands of the trustees and pass out of and away from the estate*." (Italics not in original text.) The cited case specifically held that so-called normal or regular commissions (as now defined in subdivisions 1 to 5 of the cited section) are related to and are payable only in respect of the corpus or capital of an estate. In *Matter of Sidenberg* (204 App. Div. 255) the Appellate Division in the First Department applied the rule stated in *Beard* v. *Beard* (*supra*), and, in respect of the operation of a hotel premises in which there were ground floor stores separately leased for long terms, held that the gross rents received from the stores must be consolidated with the income from the operation of the strictly hotel premises and that unless a net income resulted from all the operations no principal or regular commissions could be allowed. These decisions were made prior to the enactment of the amendment of 1923 which for the first time authorized a fiduciary required to manage real property to deduct five per cent from the rents collected by him. The trustee seeks to avoid the effect of the rule in *Beard* v. *Beard* (*supra*) and in *Matter of Sidenberg* (*supra*) by saying that the rule has been modified by the enactment of 1923 and by saying that the operation of this building in this trust does not fall within the description of a business such as was considered in those cases. It seems useful to comment upon this latter idea first.

The trustee apparently makes no question that if it sold a stock of groceries over the counter day by day and replenished the stock as need required its commissions could not be computed on the gross intake of the business but must be limited to the net income, if any, realized by the trust from the business. The trustee appears to recognize, too, that if the business were a personal-service business where the articles sold are nominal in value and the income is derived almost wholly from the service of employees its commissions could not be figured on the gross intake but only on the

net, if any. The concept of what is commerce and business must vary with the times. It is common knowledge that in the operations of some large aggregations of capital their real estate is a mere commodity. In the practice of large management, servicing and ownership enterprises realty is as much an article of trade as is a bottle of olives or a can of tomatoes in the case of the corner grocer. When such combinations operate large numbers of office and other buildings space for rent is no more than an item on a shelf for sale. It is not possible to draw a distinction and to say that if a business has an inventory turn-over commissions may not be computed on the gross but that if it has no inventory commissions may be so computed. The suggested personal-service business which has no inventory disposes of that contention. If a fiduciary handles a parking space occupying a block front and takes in the daily parking fees and pays the wages of employees, it could not under *Beard* v. *Beard* (*supra*) collect commissions on the gross intake. If this same space were operated by the same fiduciary and its employees but the casual parker had the use of a tin garage at a per diem rate instead of occupying a casual open-air space, the fiduciary would still be operating a business. If space were rented by the week or month the business would be still a business. So it would remain if a so-called taxpayer were erected on part of the plot and rented to grocers or others. In none of these instances should it be admissible to argue (under the *Beard* v. *Beard* rule) that the gross rents are the base on which capital commissions are to be computed unless there is to be found some magic in the word " building." It seems illogical to say that the fiduciary is not conducting a business merely because the commodity offered happens to be space in a fixed building though the fiduciary handles multiple units of like space. To say that handling such space is not a business is to ignore facts and actualities. Such businesses have invited and have obtained public subscription to capital. Such businesses profit in good times and in times of general depression show precisely the same losses as do the types of business which the trustee concedes to be within the rule in *Beard* v. *Beard* (*supra*).

The true concept of capital commissions — so-called normal or regular commissions — is stated by the Court of Appeals in the quoted excerpt from *Beard* v. *Beard* (*supra*). Under that concept it is difficult to see upon what basis the claim of normal or regular commissions on gross rentals can be sustained. Since regular commissions apply only to the capital of the estate (*Beard* v. *Beard, supra*) it is only an accretion to capital or a diminution of capital by way of capital payment which furnishes a basis for such commissions at all.

In the revision of section 285 in 1923 the Legislature must be deemed to have envisaged the whole subject. In the grant of regular commission rates double those theretofore in effect and in the creation of a wholly new basis for compensation in respect of rents the Legislature must be understood to have been dealing with subjects of differing area and with compensation for different service. As always, the regular commission was a commission on *capital* transactions and on income *paid to beneficiaries* only. This regular commission was doubled. The authority to deduct five per cent of the rents collected by a fiduciary who managed real estate was a wholly new compensation for transactions which theretofore executors had not conducted. It was granted in terms of " five per centum of the rents collected." *It is not called a commission.* On the contrary, it is distinguished therefrom by the statement that it is " in addition to *the commissions herein provided.*" If it were considered to be effective in the same area as the *capital* commissions provided for in the preceding subdivisions 1, 2, 3 and 4 of the section or in the same area as the *income* commissions provided for in the preceding subdivision 7 of the section it would have been phrased as being " in addition to the " *other* " commissions herein provided." That it was not so phrased is evidence of the intention of the Legislature to comprehend within the " five per centum of the rents collected " the only and the exclusive compensation for service in this field.

If the Legislature by its language intended to add a regular or normal commission of two per cent on gross rentals, it would have been entirely simple to have said that a commission of seven per cent was allowed on gross rents. It must be supposed that the Legislature was fully aware of the rule stated by the Court of Appeals in *Beard* v. *Beard* (*supra*) and that so far as real estate was concerned it intended to give to executors and trustees compensation only for the actual labor of collecting rents and managing real property; and intended to limit that compensation to five per cent of the gross rents. Trustees theretofore had been allowed as expenses only their reasonable actual payments to managing agents. To suppose that the Legislature concealed a bonus in that perfectly plain enactment and (without saying so in words) added another two per cent on gross rents (or in the case of large estates, another six per cent, if three or more fiduciaries were acting) is to suppose a repeal by indirection of the standard which had been in operation for years in the case of trustees; and the enactment of a rule in lieu of it which would operate in many cases to deprive the beneficiaries of trusts of any share in income and to turn it all over to executors and trustees under the guise of management commissions.

The trustee envisages direful consequences if it cannot charge seven per cent on gross rents and if it cannot also charge brokerage commissions paid to outside brokers for getting tenants. It is pertinent here to repeat what was said by the Court of Appeals in *Beard* v. *Beard* (*supra*): " If this rule does not in all cases give adequate compensation to trustees, no great injustice can flow from its operation, as trustees are not obliged to act and thus execute a trust which would be unprofitable or burdensome to them; and that the rule will operate beneficially in most cases and subserve the best public policy cannot be doubted." That there is some sweet as well as bitter can be seen by reference to *Matter of Brennan* (251 N. Y. 39) where a fiduciary succeeded in establishing a right to deduct five per cent on rents though it did little respecting the building but receive and deposit the monthly rent check of a tenant who occupied the property under a net lease.

The trustee asserts that fiduciaries cannot be found to assume the management of trust properties unless the rate of pay for which it contends is approved. Let us see if this counsel of despair is justified. The gross rents listed in the account filed indicate an annual rent roll exceeding $300,000. Five per cent of this sum is $15,000. The brief of the trustee (pp. 32, 33) sets out the scale of commissions recommended by the Real Estate Board of New York to be charged for management by competent brokers and. agents. From these recommended rates it is to be noted that on the basis of a rent roll of $300,000 the amount payable to a qualified managing agent for management of the entire building is only $7,500. That leaves $7,500 gross annually for the trustee. But, the trustee says, we must pay commissions for getting tenants. True, unless the trustee gets them itself as it might do. If it does not do anything its argument that it should be paid lacks force. Space in this corner building on Fifth avenue in the Forties is shown to be rentable as the account shows that this fiduciary actually rented much of the space.

With a competent managing agent glad to have the work at the Real Estate Board rates and to do the work for half of what the statute permits the trustee to charge, there is left in the hands of the trustee $7,500. If it be assumed (1) that the trustee does absolutely nothing at all to get any tenant, (2) that the superintendent of the building doesn't rent any space, (3) that no tenant holds over, (4) that no tenant makes a renewal which would involve no brokerage, and (5) that the trustee has rented the building on a year to year basis, it would be possible for the trustee to exhaust the $7,500 with which it starts by paying brokerage for getting tenants. But so far-fetched a picture does not comport with actual

conditions. Stores in such space are rented for long terms. Not all office space is rented only for a year. Managing agents generally try to make the leases in their buildings and charge only half a commission for making them. Unless deliberate effort were made to load the costs it would be the exception that an outside broker would have to be paid a full commission. So there is obvious profit to a fiduciary in the five per cent charged on gross rents. And where profit is to be had there will be found fiduciaries seeking it.

The essential fact is that the legislative enactment of 1923 is comprehensive in its treatment of compensation for rent collection and management. The same act which gave five per cent on gross rents as compensation for such collection also modified favorably to fiduciaries the rates of compensation for capital transactions. When the Legislature dealt with the subject of gross rents and, simultaneously, with the subject of capital commissions its action made it clear that gross rents were not to be a base for capital commissions but only the base for the special compensation created for the first time in the act. The only sound interpretation of the legislative act is that the five per cent on gross rents excludes all other commissions *on the gross*. This leaves operative the regular or normal commissions *upon the net only*.

The allowance is a *single* allowance and may not be doubled or tripled no matter what the number of fiduciaries may be. (*Matter of Arnolt*, 127 Misc. 579, 589.) The rule just noted emphasizes that this is not a *commission* but is a special compensation which covers the whole field of rents. The argument that the words — " in addition to the commissions herein provided "— imply that regular or normal commissions are payable on gross rents would mean that in the case of a large estate with three executors there would be collected on gross rents three normal commissions and one special commission — a total of eleven per cent. No estate and no real property could stand that burden. No one can suppose that the Legislature intended to impose such a burden. If the management of the real estate produces a net profit then, and upon the basis of such profit only, there will attach the right to normal commissions since under the rule in *Beard* v. *Beard* (*supra*) there has been an accretion to the estate.

It should be noted clearly that the five per cent charge on rents covers not alone collection of rents but also *management* of real property. Management imports activity. It includes the payment of housekeeping charges, of mortgage interest, of taxes, of water rates and generally involves the same activities which an owner would carry on in respect of his own property. The point was emphasized in *Matter of Hayden* (54 Hun, 197, 205). There the

claim was made for commissions on a large sum received and paid out in the management of a business as distinguished from the smaller sum paid out for debts of the deceased and for legacies under his will. As to the debts and legacies the court said that commissions were payable. As to disbursements in the management of the business the court said: " While it is apparent that the money was received and paid out in the execution of the provisions of the will and pursuant to the authority given by it, it nevertheless does not appear that from the business any profit or any advantage resulted to the estate. The buying and selling incident to the conduct of a manufacturer or other business is, at best, *a species of reinvestment of the trust funds.* If commissions were to be allowed each time a stock in trade were purchased or sold, it is quite probable, as well as possible, for a case to arise where the executor's commissions would largely consume the body of the estate." (Italics not in original.) This case was approved by the Court of Appeals in *Beard* v. *Beard* (*supra*), and the quoted text was expressly adopted by the Court of Appeals as the law of the situation. Commenting on the argument made by counsel " that the rule laid down in those cases applies only to the investment and re-investment of the capital of the estate," the Court of Appeals said: " The rule is not thus confined and it was not so confined in the *Hayden* case, and the principle underlying the decision in those cases requires that it should be applied to such case as this. The rule may work harshly in some cases. * * * We think the true rule for allowance of statutory commissions is this: Trustees are entitled to commissions for receiving all moneys *which constitute the corpus of the estate, and any additions thereto from increase of any kind,* and thus the moneys upon which commissions are to be computed can never exceed the gross amount of the estate *and its net income;* * * *." (Italics not in original.)

In the same case the court cited with approval the statement in *Matter of Kellogg* (7 Paige, 265, 267) where Chancellor WALWORTH said: " The investment or reinvestment of the fund, from time to time, upon new securities for the purpose of producing an income therefrom is not such a paying out of the trust moneys as entitles the guardian or trustee to commissions for paying out the same, within the intent and meaning of the statute on this subject; unless such securities are finally turned over to the *cestui que trust* as money, or otherwise applied in payment on account of the estate. Neither is the guardian or trustee entitled to charge a new commission for the collecting or receiving back of the principal of the fund which he has so invested. But he will be entitled to commissions upon the interest or income of the fund produced by such investments, and received and paid over by him."

The payment of taxes and of mortgage interest differs in no material respect from investment and reinvestment operations. The fund comes in and goes out in just the same fashion. The times and amounts of payment are fixed by the tax assessments and by the mortgage terms. While the comment is made in respect of another sort of transaction, the statement of the Court of Appeals in *Farmers' Loan & Trust Co.* v. *Turner* (242 N. Y. 240, 243) is applicable here. The writer of the opinion of the court said: " It would, it seems to me, be a travesty on justice to hold that, by shifting money from one pocket and putting it into the other, such act constituted receiving and paying out within the meaning of the statute." The claim for capital commissions there was based on the use of cash assets to pay off a mortgage on real estate with the resultant ownership by the estate free of mortgage of an asset theretofore mortgaged. The money went out and the value released by payment of the mortgage came into the estate, *but that did not alter the capital value of the estate*. Hence no capital commissions were allowed. Payment of mortgage interest and taxes out of rents is of like effect.

In 1869 the Court of Appeals (*Collier* v. *Munn*, 41 N. Y. 143) reviewed the growth of the law which gave commissions to executors and trustees. That review is too lengthy to be quoted here. After commenting on the right of the fiduciary to hire agents and clerks and to be reimbursed for the expenses of their service, the court said (p. 147): " But for his own services, his compensation must be confined to the allowance of a fixed rate, by way of commissions, as settled by the court. That these commissions are in full for all his services in the discharge of the trust."

The case of *Lent* v. *Howard* (89 N. Y. 169, 179) is in point in this connection. There the executors had managed real estate, entered the gross rents in their accounts and credited themselves with disbursements for taxes, repairs, etc. The court held that under the law as it then stood the executors had no duties as such respecting real estate. But since all parties in interest had assented to the management by the executors the court passed on the account which included proceeds of realty operation. The executors claimed commissions on the gross intake and outgo. The opinion says (p. 178): " The gross rents and income were entered in the executors' accounts, as were also the disbursements for taxes, repairs, labor, seed, etc." After commenting on the executors' lack of authority respecting realty the court recognized the existing status and ruled on it. Reiterating the principle " that for the personal services of an executor or trustee in the discharge of executorial duties, or those which pertain to his trust, the commissions allowed

by law are deemed to be a full equivalent," the court said (p. 179): " In accounting, the executors should be charged *with the net income and profits.*" (Italics not in original.) In computing the net the court allowed deduction of the equivalent of an agent's salary to the executor who did the actual managing. It is apparent, therefore, that by limiting the compensation to the *net* the court rejected the claim of the executors that they were entitled to commissions on disbursements for taxes. Mortgage interest is in that same category. The five per cent on rents now deductible compensates for all such services of executors.

From time to time the Legislature has amended the law respecting compensation of executors and trustees. For instance, it has specifically authorized an allowance of compensation to a fiduciary who renders legal service in addition to ordinary executorial service. In specific aspects it has otherwise liberalized the rules respecting commissions. But it has never departed from the basic standard that commissions are presumptively full compensation for all services of the fiduciary when figured on *the original capital plus net accretions to capital.* Nowhere in the history of this section and in the judicial interpretation of it by appellate courts can there be found justification for the position urged by the accounting fiduciary here that expenditures for mortgage interest, taxes or other recurrent items give rise to a right to regular or capital commissions on the amount of these recurrent expenditures. Always the courts have been clear that whether the work was heavy or light the compensation of the fiduciary was limited to the statutory rate of commissions on true capital, on true capital *accretions* and on true net income. The foregoing commentaries require the overruling of the exceptions by the trustee which relate to the subject-matter of normal commissions on gross rents.

The ruling by the referee is excepted to by one of objectants in so far as it fails to hold that the trustee's normal commissions are chargeable only on *net* income. Pursuing this same idea, exception is taken to the ruling of the referee that commissions may be collected on the amounts paid out of gross rents for mortgage interest, taxes and like items. These exceptions are sustained. It has already been stated that operations of investment and reinvestment are not regarded as the receiving and paying out of money entitling a fiduciary to normal commissions. The collection of rent installments and the payment of mortgage interest and taxes therefrom import nothing more to the capital of the estate than any other investment and reinvestment. Every tax which accrues constitutes the creation of a mortgage on the property. Every payment of a tax constitutes the discharge of a mortgage. Every

interest date under a mortgage adds the amount of the interest to the mortgage debt. Every payment of the interest is a part discharge of the mortgage debt. In these in and out transactions there is nothing which warrants normal commissions. (*Farmers' Loan & Trust Co.* v. *Turner, supra.*) These are " management " acts. These are compensated exclusively by the five per cent deductible from gross rents. Managing agents collect rent, pay taxes, pay mortgage interest and other recurrent expenses as a matter of course and without extra charge. It has already been shown that the five per cent deduction from rents leaves a profit for the executor or trustee though the actual work be done by a managing agent. For the reasons set forth *in extenso* the position taken by the objectant is held to be sound. In the particulars stated the exceptions of the objectant are sustained.

The trustee excepts to a surcharge based upon its act in turning over to a tenant in default interest which had accrued and had been collected by the trustee upon bonds deposited by the tenant with the trustee as security under the lease. The referee ruled against the trustee. The record entirely supports the referee and the exception of the trustee in this respect is accordingly overruled.

The trustee excepts to that portion of the referee's ruling which holds that the trustee is not entitled to charge against the estate amounts paid by the trustee for brokerage in the making of leases. The referee is wholly right in his conclusion and the exception of the trustee in this respect is overruled.

The trustee excepts to so much of the referee's ruling as holds that ordinary expenses of rent collection, including dispossess proceedings, constitute part of the operating expenses. The referee's conclusion is right and the exception of the trustee is overruled.

The other exceptions by the trustee are likewise overruled. They merely raise in another form the same objections to the referee's conclusions as were covered by its other exceptions.

The objectant by an exception to the referee's conclusion II seeks to hold the trustee liable for interest penalties on taxes paid by the trustee after the penalties had accrued. The referee found that there were offsetting benefits in part and that the income beneficiaries had themselves received distributions of funds which left the trustee with insufficient funds on hand to make the payments at the time they were due. It must be supposed that the use of the money by the beneficiaries during this period of prepayment gave them a further offsetting benefit which supports the referee's conclusion and so the exception by objectant to the referee's conclusion of law numbered II is overruled.

Objectant also excepts to the referee's conclusion of law III. No support is to be found in the record for this exception and, accordingly, it is overruled.

Objectant excepts also to allowance of payments made for legal services. She caused many of them. She avoided a charge of the whole of the expenses to her own share. The tax upon her share by reason of the charge to it of her proportion of the total expenses is certainly not in excess of what ought to be taxed to her. Her exception is overruled.

Objectant excepts to conclusion numbered VI of the referee which holds that payments made in 1918 to a contractor and an architect in relation to alterations in the building required by the borough president are chargeable to income. The referee in his finding of fact 30 says there is no evidence that the payments should have been charged against principal rather than income. This finding of fact and this conclusion of law are contrary to the record. The minutes at pages 401 to 404 refer to prior proceedings in this court and counsel for the trustee conceded that in such proceedings the items in question were held to be chargeable to principal so far as this objectant is concerned. Reference to the accounting proceeding by the prior trustee which resulted in a decree under date April 18, 1918, and to the opinion of the referee in that accounting proceeding discloses beyond doubt that there was a finding that the costs in question were chargeable to principal and not to income. This report and the opinion of the referee were filed December 14, 1917. They expressly held that the sinking fund established out of income for the purpose of paying these costs of alteration should be eliminated. The surrogate subsequently confirmed the referee's report in all respects. In a supplemental accounting which resulted in a decree dated November 14, 1918, the former trustee accounted for the fund which had been so segregated from income and this objectant was credited in her income account with her share of it. The principle applicable to these expenditures, therefore, has been adjudicated and the charges held to be principal and not income charges. If the matter were open the same result would be reached. These expenditures are clearly chargeable to principal and as was pointed out by the referee in the 1917 accounting the lack of cash principal on hand out of which to pay the charges cannot be held to alter the incidence of the burden. Accordingly to the extent necessary to correct the deductions from the income of this objectant the exception to the conclusion numbered VI is sustained.

Objectant also excepts to the referee's conclusion numbered VII. This is based upon the referee's finding of fact numbered 32 wherein

the referee says that there is before him no evidence of fact showing the right of reimbursement from the previous tenant. The trustee's exhibit 5 in its paragraphs 3 and 6 clearly show that the tenant had the burden of paying these charges. There is nothing in this record to show why the trustee did not enforce that lease and so the exception must be sustained. However, if the trustee seeks a rehearing on this single question for the purpose of presenting evidence in justification of its failure to enforce the lease terms, such application will be entertained on a proper showing that some basis for its lack of action exists.

Objectant excepts to conclusion of law numbered VIII and thereby seeks to prevent the payment of commissions to the trustee because of delay by the trustee in seeking a judicial settlement of its accounts. There is no support in the mere delay for a denial of commissions and accordingly the exception is overruled.

Objectant excepts to the conclusion of law numbered IX and thereby seeks to compel the withholding of commissions from the trustee because it did not act more promptly in retaking possession of the building which constitutes the capital of the trust estate. The conditions were such as to make the matter one of judgment and discretion. Nothing in this record warrants any finding that the trustee did not act with care and in entire good faith and, accordingly, this exception is overruled.

Objectant excepts to the referee's conclusion of law numbered X and thereby seeks to hold the trustee liable for a larger sum than was actually realized by it on the sale of furniture which was in the building constituting the capital of the estate while it was operated as a hotel. There is nothing in the record to support the exception and, accordingly, it is overruled.

Objectant also excepts to the referee's conclusion of law numbered XI. This exception will be overruled except as other rulings herein made will affect the computations to be finally made on its account.

Objectant also excepts to conclusions of law numbered XIII and XIV and thereby raises the same question as to normal commissions on rents and expenditures which has already been fully discussed. For the reasons already stated, these exceptions are sustained to the extent already indicated.

Objectant excepts to the conclusion of law numbered XVI which is a restatement by the referee of a summary of the account. To the extent which other rulings have necessarily altered the summary the exception is sustained. Interest on surcharges is to be computed to the day of the decree and not to the day of the report.

Objectant also excepts to the conclusion of law numbered XVII. This is a restatement by the referee of the basis upon which the trustee's commissions are to be computed. Because the court has reached a different conclusion in respect of some items this exception must be sustained to the extent only of conforming the computation of commissions to the basis established by the rulings here made. So that there will be no misunderstanding about the extent of such rulings it is here specifically stated that upon the rentals received prior to re-entry into the building by the trustee the trustee is entitled to normal commissions only on the net income, after payment of mortgage interest and taxes, available for distribution to the beneficiaries; but the trustee is entitled to the five per cent deduction from the net rents paid by the tenant prior to such re-entry, less any payment by it for mortgage interest or taxes.

The special guardian excepts to the conclusion of law numbered II and thereby seeks to raise the same question as was raised by objectant. For the same reason the special guardian's exception is overruled.

The special guardian excepts to the conclusion of law numbered IV and thereby seeks to have charged against objectant's share exclusively the expenses of litigations which the special guardian charges wholly to objectant. The court is satisfied to accept the referee's point of view in respect of this matter and hence overrules the exception.

The special guardian excepts to the conclusion of law numbered VIII and thereby seeks to raise the same question as was raised by objectant in relation to denial of commissions because of delay. For the reasons already stated this exception is overruled.

To summarize:

The five per cent charge against gross rents is held to be the sole compensation to an executor or trustee who handles rents whether directly or through an agent. Only if a net distributable balance of rents remains will any right to commissions under subdivisions 1, 2, 3, 4 and 7 of section 285 of the Surrogate's Court Act inure to the benefit of the fiduciary. The cost of employment of agents and brokers must be discharged by the fiduciary with no right of reimbursement beyond the five per cent deduction from gross rents. The payment out of gross rents of mortgage interest, taxes and housekeeping charges gives the fiduciary no right to ordinary commissions.

The trustee has voluntarily accounted for its further proceedings to December 31, 1935, and all necessary parties have been cited on such further accounting. This decision is now published since it will furnish a guide to the parties in determining whether objections

thereto will be filed and, if so, the area to be covered by them. By agreement reached before the court the time of objectant VonClaussen to file objections to the further accounting is extended to May 8, 1936. By consent the time for filing objections by all other parties is fixed at April 24, 1936. The special guardian who acted in the original accounting has been appointed in the further accounting proceeding and he should proceed to file his report in regular course.

When the issues, if any, in the further accounting proceeding are defined and disposed of an order will be made consolidating the two accounting proceedings and then a single decree may be submitted in conformity with this decision and such further rulings as may be necessary on the further accounting. Proceed accordingly.