In the Matter of the Estate of Solomon M. Swartz, Deceased.

Surrogate's Court, New York County, March 9, 1937.

*Engelhard, Pollak, Pitcher, Stern & Clarke*, for the petitioner.

*William Schwartz*, special guardian.

Foley, S. In this accounting of the trustee there arises the question of the allowance of commissions on rents collected from real property within the trust. The method of computing such commissions on income from real estate at the normal percentage rates fixed in section 285 of the Surrogate's Court Act and its predecessor sections had never given rise to any doubt over a course of one hundred years until the decision in *Matter of Byrnes* (159 Misc. 302) and *Matter of Schinasi* (161 id. 636). During that entire period, the Court of Chancery, the Surrogate's Court and the Supreme Court, with the approval of the appellate courts, had awarded to executors and trustees commissions " for receiving " computed upon gross rentals and commissions for " paying out " computed upon disbursements paid out of gross rents for taxes, repairs and other charges and upon the net income paid over to the beneficiary.

That rule had been stated in many decisions. It was applied by Chancellor Walworth as early as 1830, immediately after the enactment of the provision of the Revised Statutes, in *Vanderheyden*

v. *Vanderheyden* (2 Paige, 287). There commissions were allowed under the new statute to a guardian on the full amount of rents received and disbursed. Annual settlements and rests were recognized. The rule was restated in the decision of Surrogate BRADFORD, rendered in 1850 in *Fisher* v. *Fisher* (1 Bradf. 335). His opinion in that case was cited with approval by the Court of Appeals in *Matter of Mason* (98 N. Y. 527), decided in 1885. In the latter decision the court held that the trustees were entitled to commissions on the annual income of the trust estate, which included rents. In other words, full commissions were given upon the total annual receipts and disbursements. (See, also, *Robertson* v. *de Brulatour*, 188 N. Y. 301, 316.)

The judicial rule for computing normal commissions upon gross rents was, of course, based upon the applicable statutory provisions. These provisions are now found in section 285 of the Surrogate's Court Act. That section expresses clearly the method of computation. Commissions are to be allowed at the rate of five per centum for " receiving and paying out *all* sums of money not exceeding " $2,000; for receiving and paying out " any additional sums," reduced percentage rates are to be applied; for " all sums " above $50,000, the rate is fixed at two per centum. As to income commissions, where the executor or trustee renders an annual account to the beneficiary, or where a guardian files an annual inventory " of *all his receipts* and disbursements," he shall be allowed and may retain the same commissions on the " amount of income so accounted for " as he would be allowed upon principal on a judicial settlement. These directions strongly emphasize the basis for the long-established rule which gave the fiduciary his commissions upon what has been variously described as all income received, or total income, or gross income, or gross rents. The determination of the pending proceeding might well be made exclusively upon the clear language of this statute.

It is unnecessary to refer at any length to the origin and history of the statutes which bear upon the jurisdiction of our court over testamentary trusts and the method of fixing commissions of fiduciaries in the Surrogate's Court and in the Supreme Court. Illuminating discussions of these questions may be found in the opinion of Chancellor SANDFORD in *McWhorter* v. *Benson* (1 Hopkins Ch. 28, 32), in the opinion of Surrogate BRADFORD in *Fisher* v. *Fisher* (1 Bradf. 335), in the opinion of Surrogate ROLLINS in *Matter of Roosevelt* (5 Redf. 601), and in the decision of the Court of Appeals in *Matter of Runk* (200 N. Y. 447). (See, also, Jessup's Surrogate Practice [4th ed.], p. 1182 *et seq*, and Jessup-Redfield

Surrogate's Courts [3d ed.], pp. 2383 *et seq.* and 2400 *et seq.*) The authorities trace the derivation of the power to fix commissions of executors and trustees in the Surrogate's Court and in the Supreme Court from the Rules of Chancery established in 1817 as the result of chapter 251 of that year. Under that statute, commissions were authorized to be awarded upon the basis of what the chancellor deemed to be reasonable. In 1817, pursuant to the act of that year, a rule of chancery was promulgated which fixed commissions at percentage rates upon all sums for receiving and paying out the same. In 1823 Chancellor SANDFORD held that the fixed rates were exclusive of all other compensation. (*McWhorter* v. *Benson*, 1 Hopkins Ch. 28, 32.) In 1830 these percentage rates established by the Rule of Chancery were incorporated for the first time into statute. (Revised Statutes of 1829, part II, chap. VI, tit. III, art. 3, § 58.)

Section 58 was, therefore, the origin of present section 285 of the Surrogate's Court Act. It provided that the surrogate shall allow to an executor for his services certain commissions at percentage rates for " receiving and paying out *all* sums of money." With slight modifications each successive statute for a period of over a century has included this language. In each of these acts the Legislature has based the commissions upon the gross amount received by the fiduciary.

It was held in *Matter of Byrnes* and in *Matter of Schinasi* (*supra*), however, that a contrary rule was established in *Beard* v. *Beard* (140 N. Y. 260), and that the latter case construed the existing law and imposed a subsequent rule of conduct upon the courts, to award commissions computed upon *net* rents only. A careful scrutiny of that decision reveals that the Court of Appeals simply limited its award of commissions on net rents to a situation where the real property constituted part of a general business required to be conducted by the executor or trustee. With that exception, the court in no way indicated any intent to modify the long-established rule that normal commissions were to be computed upon gross rents of ordinary real property. In the *Beard* case the trustees were required to manage the so-called Erie Basin property, which consisted of a storage and warehouse business and included real estate as a part of such business. It was a unified operation, and the descriptive word " business " was expressly used in the will.

The court held that commissions could not be based upon the gross intake of the business or upon the expenditures made incidental to its operation. Necessarily, if the gross pecuniary operations might be subjected to normal commissions, exorbitant and

excessive compensation might be awarded in an amount entirely out of proportion to the net profits of the enterprise. It was stated that the true rule for the allowance of commissions in a distinctive and exceptional case of this kind excluded " commissions upon investments and reinvestments and moneys disbursed and received in the conduct of a business carried on to produce net income. In the case of such business, the commissions are to be computed on the net income only which came to the *corpus* of the estate as an increase thereof."

This salutary rule had been laid down previously by the Court of Appeals in its affirmance, without opinion (125 N. Y. 776), of *Matter of Hayden* (54 Hun, 197). The method of computation in the exceptional case was followed by the Appellate Division, First Department, in *Matter of Sidenberg* (204 App. Div. 255). There the trustees sought to obtain commissions upon the gross financial operations of the Hotel Theresa, situated in this county. Commissions were asked upon even the cost of supplies and food purchased for the restaurant and upon the sales thereof. The Appellate Division held that the hotel must be treated as a unified operation and that the stores and concessions located in it and the return from the restaurant and rooms must be deemed part of an integrated business. Necessary deductions for expenses were required to be made in order to ascertain the net income. Commissions were allowed only upon such net income.

The same estate came before me in a subsequent accounting (*Matter of Sidenberg*, 147 Misc. 742). There were other real properties within the trust, separate and apart from the hotel. Commissions on gross rents of the latter properties were allowed by me. That estate, therefore, is a typical example of the distinction between the award of normal commissions upon the net income of a business and the method of computing commissions on the gross rents of ordinary real property under section 285 of the Surrogate's Court Act. The management of and collection of rents from a parcel of ordinary real property in an estate have never been treated as a business operation in the law of administration.

The exception to the general rule applied by the *Beard* case and other cognate decisions has been followed for similar reasons in cases dealing with commissions allowable to an administrator or executor upon the equity in margin accounts held by stockbrokers for a decedent, or upon equities of mortgaged real estate or upon equities in collateral loans placed by the decedent. (*Matter of Mercantile Trust Co.*, 210 N. Y. 83; *Matter of Mills*, 149 Misc. 389; affd., 263 N. Y. 574; *Matter of Butterworth*, 158 Misc. 477;

*Farmers' Loan & Trust Co.* v. *Turner*, 242 N. Y. 240.) The principles upon which these decisions were based are obviously logical since what the administrator or executor actually receives as an asset of the estate is not the gross value of the incumbered property but only the equity or the net proceeds of the liquidation of the property.

It is significant, also, that the practical construction previously given to the statutes before the decision of *Beard* v. *Beard* (*supra*), in 1893, was continued by the courts without exception after the date of that decision. Certainly no surrogate in the succeeding forty years, in any published decision, ever held that the *Beard* case was authority for the reduction of the basis of commissions from gross rents to net rents. In *Matter of Lathers* (122 Misc. 543) Surrogate SLATER stressed the distinction between the rule as to commissions on a unified óperation of a business and the allowance of normal commissions on gross rents. He cited in support of the latter rule *Matter of McDowell* (102 Misc. 275, 302, 303; affd., 193 App. Div. 914; modfd. on other grounds and affd., 230 N. Y. 601). The latter case was decided in 1921. He also cited *Matter of Smith* (86 Misc. 136), decided in 1914, and he referred to the prior decisions of the Court of Appeals in *Matter of Mason* (98 N. Y. 527) and *Matter of Selleck* (111 id. 284).

There remains for consideration the question of whether the amendment made by the Legislature in 1923 to section 285 of the Surrogate's Court Act, modified the existing rule that normal commissions should be computed upon gross income. That amendment (Laws of 1923, chap. 649) authorized the allowance of additional commissions of five per cent on gross rents for the management of real property. It was indicated in *Matter of Schinasi* (*supra*) that in the search for the legislative intent in the enactment of this amendment consideration must be given to the " prospective operation of the statute." The established rule of primary construction is to the contrary. An amendment is not to be construed in its prospective operation until the intent of the Legislature be ascertained and determined by the law in existence at the time of the passage of the amendment and as illuminated by the decisions construing and interpreting the current law. The provisions of a statute must be read in the light of its history and purpose. (*Matter of Frasch*, 245 N. Y. 174, 180; *Matter of Crawford*, 218 App. Div. 392; *Matter of Hamlin*, 226 N. Y. 407.) The rule is stated in *Orinoco Realty Co.* v. *Bandler* (233 N. Y. 24, at p. 30), as follows: " When the Legislature amends or considers afresh a statute it will be assumed to have knowledge of judicial decisions interpreting the

statute as then existing, and if it deals with it in a manner which does not rebut or overthrow the judicial interpretation it will be regarded as having legislated in the light of and as having accepted such interpretation." (Citing *Komada & Co.* v. *United States*, 215, U. S. 392; *Caesar* v. *Bernard*, 156 App. Div. 724, 732; affd., 209 N. Y. 570; *Warner* v. *Jaffray*, 96 id. 248, 253; *Pouch* v. *Prudential Ins. Co.*, 204 id. 281, 288; see, also, *Matter of Cole*, 235 id. 48.) With these rules in mind, it cannot logically be urged that when the Legislature in the face of a continuous line of decisions for so long a period simply provided for additional management commissions it intended in any way to modify the existing rules so clearly applied by such decisions. The amendment made to section 285 in the year 1923, authorizing management commissions, specifically directed that such new commissions were to be additional to those already provided by law. The new matter read as follows: " Where a trustee or executor is, by the terms of the instrument, required to collect the rents and manage real property, he shall be allowed and may retain, five per centum of the rents collected therefrom, *in addition to the commissions herein provided.*" (Italics mine.) This section has been since modified in other respects not material here, but the phrase " in addition " still remains.

Plainly, therefore, the Legislature did not intend by the use of the words " in addition " to modify the rule of computation as to normal commissions fixed in the prior provisions of the section. If it intended to alter the rule as to normal commissions being computable upon gross rents, it might have provided that the five per cent management commissions should be in lieu of normal commissions. (See § 285-a.) It might also have directed by specific amendment that normal commissions should be reduced so as to be computable upon net income only. The Legislature did neither of these things. It retained normal commissions without change. It provided that the new management commissions should be additional and supplemental to those allowable under the antecedent provisions of section 285.

Over a long period of years no complaint appears to have been found with the statutory system of allowing commissions on gross income. From 1830 to 1921 the percentage rates ranged from two and one-half per cent on smaller amounts to a maximum of one per cent on higher amounts of income. In 1921 the rates were increased from two and one-half per cent to five per cent in the lower brackets of income and to two per cent in the higher brackets. In the earlier period present day trust companies and corporate fiduciaries were practically unknown. The average executor or

trustee was an individual, and property within estates consisted almost exclusively of realty. The rates of normal commissions, either under the system before 1921 or after that date, were reasonable for the services rendered even when based upon gross rents. The 1923 amendment, which granted five per cent management commissions, constituted a substantial increase over prior and existing compensation. So far as possible and consistent with the legislative intent, that amendment was restricted so as to prevent hardship. As early as 1830 it had been held (*Vanderheyden* v. *Vanderheyden*, 2 Paige, 287) that a fiduciary might employ an agent to collect the rents of realty and that the expense of the agent constituted a proper credit allowable to the fiduciary in his account. In *Matter of Althause* (122 Misc. 279) I held that where the fiduciary sought five per cent management commissions he could not secure the benefit of a credit for the cost of an agent. In other words, the agent's commissions must be included within the five per cent management commissions. It was also held by other surrogates and by myself that the five per cent management commissions could not be doubled or trebled where there were two or three executors or trustees. A single management commission only could be allowed.

The reduction, by judicial interpretation, of normal commissions does not affect alone the compensation of corporate fiduciaries, but it also tends to reduce the compensation of individual fiduciaries in many estates. Thus, the widow, or the lawyer, or business associate of the testator, or the brother or sister, or other relation, may have been selected by him to administer his estate. The terms of the statute make no distinction between the persons within the general class of executors or trustees and specifically whether corporate or individual.

It is not within the power of the courts to repeal or amend a statute enacted under unquestioned legislative power. " Freedom to construe is not freedom to amend." (CARDOZO, J., in *Sexauer & Lemke* v. *Burke & Sons Co.*, 228 N. Y. 341.) The power to increase or reduce commissions is vested exclusively in the Legislature. In the absence of misconduct of the fiduciary, there is no authority in the courts to reduce or deny statutory compensation measured by the fixed standards. (*Matter of Dutcher*, 102 App. Div. 410; *Collier* v. *Munn*, 41 N. Y. 143, 147.) " If the law is to approximate a science, it must be uniform in similar cases." (Per CRANE, J., *Matter of Bushe*, 227 N. Y. 85, 92.) Where death occurs, the courts have formulated a rule for the award of compensation at less than the full statutory rates, but based upon the services rendered by

the deceased representative. Commissions are intended as compensation for the work of a faithful and conscientious fiduciary. They are not to be regarded as a bounty or gift by judicial favor, nor may they be denied for reasons not found in the statutes or the decisions.

The most recent decision upon commissions on rents was rendered by the Court of Appeals on the same day as the filing of this decision. (*Matter of Wendel*, 273 N. Y. 532, affg., without opinion, 248 App. Div. 713.) The immediate question involved there was whether management commissions might be allowed to a temporary administrator. In *Matter of Wendel* (159 Misc. 900), from which that appeal was taken, in addition to the management commissions, I awarded normal commissions upon the gross rents received. The latter phase of the determination was accepted by all the parties. An appeal was taken only upon the right of the temporary administrator to additional management commissions. The Court of Appeals affirmed unanimously. The effect of the decision in *Matter of Byrnes* (*supra*), and of the contrary rule was discussed and presented in the briefs. If the court had believed that the management commissions were in lieu of normal commissions or that the amendment of 1923 had changed the basis of the allowance of normal commissions, it would have undoubtedly found a way to reduce the amount allowed by the surrogate.

If the rule in *Matter of Schinasi* (*supra*) is followed to its logical conclusion, it would restrict the commissions of a general guardian of the property of an infant or of the committee of an incompetent to net income upon personalty as well as realty. Income taxes, premiums on surety bonds, attorneys' fees and other reasonable and proper income charges would be required to be deducted before the basis for the award of commissions could be reached.

I accordingly hold that as to normal commissions, under section 285, the trustee is entitled to compensation at the percentage rates upon the gross rents received and gross income from investments received and upon the amounts disbursed and paid over. The method of computation adopted by the trustee is approved.

Submit decree on notice settling the account accordingly.