In the Matter of the Estate of ALONZO B. KIGHT, Deceased.

Surrogate's Court, New York County, April 21, 1938.

*Richard E. Enright* for Florence C. Enright and James T. Cox, trustees.

*Smart & von Sneidern,* for John H. Leonhauser, trustee.

*I. V. Weisbrod,* for Harold L. Ward, Jr., and others.

*Max J. Etra,* special guardian for infants.

*Frank Aranow,* special guardian for infants.

DELEHANTY, S. By prior decision it was held that five trusts were created by the will of deceased (*Matter of Kight,* N. Y. L. J., June 26, 1936, p. 3259). It was there decided that no trust had been established separately for the widow of deceased but that she was " given one-third of the income derived from all of the trusts." It was further decided that the trusts in favor of the children were " subject to the provisions in favor of deceased's wife." Further construction is now sought. The text of the will material to the present issue says:

" *Third.* I give, devise and bequeath to the executors of this Will, or to such of them as shall qualify and the survivors of them, all the rest, residue and remainder of my property, both real and personal and wheresoever situated, in special trust and confidence however, to take possession of the same and to collect the income therefrom, and to invest and reinvest the principal from time to time, and to pay over the income derived therefrom as follows:

" 1. To my wife, Florence G. Kight, one third of the net income from such property for and during her natural life, dating from the day of my death, and paid to her as often as may be convenient from and after the date of my death, and at least as often, if possible, as once in each three months.

" 2. The balance of said income shall be divided into as many parts or shares as I shall leave children me surviving or descendants of any deceased child, the descendants of any deceased child to count as said deceased child would have counted had he or she survived me. And I direct that the income from the said properties shall be paid over accordingly, that is to say, one share of said balance of said income to be paid to each child and one share of said income to be paid to the descendants of each deceased child, such descendants to take by representation.

" 3. * * *

" 4. * * *

" 5. The various trusts in favor of my children and descendants of deceased children shall be deemed separate; and the principal of each separate share, subject to the provisions in favor of my wife and the other foregoing provisions, shall in each case be paid over as follows:

" When each beneficiary other than my wife shall reach the age of twenty-five years, one-half of the principal of that portion of my estate upon which such beneficiary shall have theretofore received or become entitled to the income shall be paid over to him or her, and the remaining half of the said principal shall be paid over to him or her when he or she reaches the age of thirty-five years."

Deceased was survived by his widow, by four children and by the son of a predeceased child. The oldest child of deceased has passed age thirty-five. The question now presented is whether the trust for her benefit has terminated in whole or in part. The prior determination held that her benefits under the will are subject to a charge in favor of the widow of deceased to the extent of one-third of the income from the share set apart for this child of deceased. It is suggested that the court should decide that two-thirds of the capital of this share is held by the child who now has passed thirty-five as tenant in common with the trustees and that the remaining third of her share continues in the ownership of the trustees in trust for the life of the widow and that the income on this third is payable to the widow while she lives and that the capital goes to the child on the widow's death.

The court does not agree with this suggestion. The life of the widow does not measure the duration of any of the trusts. The plain language used by the testator fixes the termination of each of the five trusts as the date respectively when the child or grandchild benefiting therefrom attains age thirty-five. The status of the widow is that of an incumbrancer. The position of the widow of deceased under the will here for construction is the same in principle as that occupied by the wife and sister of the deceased under the will considered by the Court of Appeals in *Buchanan* v. *Little* (154 N. Y. 147). To paraphrase the language of that decision, it is clearly the intention of the testator here that the benefits intended to flow to his widow should be a charge upon the trusts erected out of his residuary estate whether held by the trustees or freed from the limitation of the trusts by their termination. To the same effect see *Matter of Reid* (165 Misc. 132).

On the authorities cited the court holds that the trust for the benefit of the oldest child of deceased has terminated and that the property which constitutes the capital thereof belongs to her subject only to the encumbrance of the charge thereon in favor of the widow of deceased. The former trust beneficiary is now a tenant in common with the trustees to the extent of a one-fifth interest in the total trust fund heretofore administered *in solido* by the trustees. They continue to be the holders as trustees of the

undivided four-fifths interest therein constituting the capitals of the four continuing trusts.

The parties have filed with the court and have sought approval of a stipulation designed to adjust various disputes among them and to put into effect the resignation of one of the three trustees. In connection with the stipulation and as part of the data upon which the court is asked to determine its propriety there has been presented an analysis of the accounts of the estate showing the practical consequences to this estate of the rule respecting trustees' commissions on rents of real property first stated in *Matter of Swartz* (162 Misc. 46) and adopted by the Court of Appeals on the authority of *Matter of Swartz* in the recent decision in *Matter of Schinasi* (277 N. Y. 252). The catastrophic effect of this rule upon the interests of dependents whom testators intend to benefit is vividly exhibited in the proceedings of this estate. The resigning trustee was one of those " *amici curiæ* " (the others were Bank of New York and Trust Company, Central Hanover Bank and Trust Company, Chase National Bank, City Bank Farmers Trust Company and Irving Trust Company) who aided Chemical Bank and Trust Company in fastening upon trust administrations in this State the intolerable burden which the rule in *Matter of Schinasi* imposes. In the case here under consideration the sole asset of the trust estates intended to benefit the widow, children and grandchild of this unfortunate testator was real property. It is the great good fortune of these beneficiaries that the trust realty is almost unique in that it actually has had a net income during the depression. Except for that unusually fortunate status of this particular realty and but for the ruling made as to the number of trusts created by the will the eleven per cent of the gross rents chargeable under the *Schinasi* rule and contended for by the resigning trustee would have left little or nothing for the intended beneficiaries. As the figures show the three trustees of this estate collectively sought under the *Schinasi* rule *forty-three per cent* of the net income of this realty in the year 1934. In that year they paid a real estate agent for actual management less than a quarter of the total compensation which they claimed under the *Schinasi* rule. The prior decision which held that there were five trusts and not one effected a reduction of this attempted charge on gross rents because the decision operated to reduce the capital of each trust to a sum below $100,000 and thus made available to the trustees collectively only one commission instead of three. Though thereby there was added to the fixed five per cent charge on gross rents under subdivision 9 of section 285 of the Surrogate's Court Act only *one* normal commission for the three trustees under subdivisions

1, 2, 3 and 4 of section 285, the total charged in this particular estate on *gross* rents works out to be about seven and eight-tenths per cent of *gross* according to the figures supplied. The luckless beneficiaries of this estate, therefore, see over *thirty per cent of the net income* siphoned out of the estate for the benefit of the trustees under the *Swartz-Schinasi* rule. Until the decision of June 26, 1936, the trustees had reported their transactions on the basis of a single trust with a capital in excess of $100,000. In prior years accounted for they actually deducted eleven per cent of the gross rents and the beneficiaries suffered accordingly. Since there was no adequate basis for reopening the former decrees the injury to the interests of the beneficiaries because of consolidation of the trusts could not be corrected.

It follows from all the foregoing that the court must confirm and approve the settlement proposed. It will relieve these beneficiaries of a part of the burden imposed by the *Swartz-Schinasi* rule because now the burden on the gross income imposed by the excessive charges authorized by that rule will pass one-half to the widow of deceased in her character as trustee (due to the resignation of one trustee) instead of to the extent of only one-third as heretofore. The one relieving aspect of the burdens on this estate is found in the testator's nomination of his widow as one of his trustees. She thereby was enabled to apply her commissions, excessive though they were, to her family's needs. The approval of the stipulation will have another and probably more substantial benefit. The capital freed by the termination of one of the trusts may hereafter be managed under a supervision common to that of the trustees if the parties desire to arrange for that. Since one-fifth of the total property and hence of the income will be freed from the *Swartz-Schinasi* rule the tax on that fifth of the income for management can be reduced to the market price of management — a price less than half of the cost imposed by the *Swartz-Schinasi* rule. As the children progress in years this unfortunate estate will emerge from the burdens of the *Swartz-Schinasi* rule by fractions of twenty per cent at a time until finally it will be freed wholly from the exactions of the rule and the testator's beneficiaries will be able to have their property managed at the standard cost which private parties must pay in the market. The full inequity of the *Swartz-Schinasi* rule could not be more sharply exhibited than it is in this estate where that part of the realty under a " trust " administration will continue to be charged fees for management double or more than double those which the part which has been freed of the trust need pay,

The court understands that all questions in respect of which instructions or advice. were sought have been disposed of by the stipulation entered into between the parties or by adjustments otherwise made or to be made except the question presented by the frozen deposits in the Bank of United States. Any dividends received on those deposits are to be allocated to principal and income accounts respectively in the proportions which the principal funds and the income funds frozen in the bank bear to each other.

Submit, on notice, decree approving the settlement, authorizing the resignation of the trustee, construing the will and settling the account.