In the Matter of the Accounting of CHEMICAL BANK AND TRUST COMPANY, as Trustee under the Will of MORRIS SCHINASI, Deceased, Appellant and Respondent.

LAURETTE SCHINASI et al., Respondents and Appellants; RAYMOND D. SANDERS et al., Infants, by JOHN G. SAXE, Their Special Guardian, Respondents.

Argued January 19, 1938; decided March 8, 1938.

*Alfred McCormack* and *George B. Turner* for Chemical Bank and Trust Company, as trustee, appellant and respondent. Both the language of the statute (Surrogate's Court Act, § 285, subd. 7) and its underlying

theory require the computation of commissions on total income. (*McCluskey* v. *Cromwell*, 11 N. Y. 593; *Lewis* v. *Ingram*, 57 Fed. Rep. [2d] 463; 287 U. S. 614; *Pinckney* v. *Pinckney*, 1 Bradf. 269; *Whitson* v. *Whitson*, 53 N. Y. 479; *Matter of Mason*, 98 N. Y. 527; *Farmers Loan & Trust Co.* v. *Turner*, 242 N. Y. 240; *Matter of Coutts*, 260 N. Y. 128; *Matter of Longo*, 226 App. Div. 285; *Matter of Roberts*, 3 Johns. Ch. 43; *McWhorter* v. *Benson*, 1 Hopk. Ch. 28; *Matter of Kellogg*, 7 Paige Ch. 265; *Matter of Prentice*, 25 App. Div. 209; 160 N. Y. 568; *Matter of Willets*, 112 N. Y. 289; *Matter of Smith*, 86 Misc. Rep. 136.) The real estate expenses paid by the trustee were not disbursements arising out of the " operation of a business." (*Beard* v. *Beard*, 140 N. Y. 260; *Matter of Byrnes*, 159 Misc. Rep. 306; *Matter of Kellogg*, 7 Paige Ch. 265; *Betts* v. *Betts*, 4 Abb. N. C. 317; *Matter of Hayden*, 54 Hun, 197; *Matter of Sidenberg*, 204 App. Div. 255; *Hancox* v. *Meeker*, 95 N. Y. 528; *Matter of Wendel*, 273 N. Y. 532; *Matter of Security Life Ins. Co.*, 31 Hun, 36.) Commissions have uniformly been allowed to fiduciaries upon total income received and disbursed. (*Vanderheyden* v. *Vanderheyden*, 2 Paige Ch. 287; *Matter of Bank of Niagara*, 6 Paige Ch. 213; *Matter of Kellogg*, 7 Paige Ch. 398; *Meacham* v. *Sternes*, 9 Paige Ch. 398; *Valentine* v. *Valentine*, 2 Barb. Ch. 430; *Betts* v. *Betts*, 4 Abb. N. C. 317; *Fisher* v. *Fisher*, 1 Bradf. 335; *Meeker* v. *Crawford*, 5 Redf. 450; *Matter of Roosevelt*, 5 Redf. 601; *Morgan* v. *Hannas*, 13 Abb. Pr. [N. S.] 361; *Matter of Allen*, 29 Hun, 7; 96 N. Y. 327; *Matter of Meserole*, 36 Hun, 298; *Matter of Goodrich*, 36 Hun, 643; *Phillips* v. *Lockwood*, 4 Dem. 299; *Matter of Mahan*, 98 N. Y. 372; *McAlpine* v. *Potter*, 126 N. Y. 285; *Matter of Bearns*, 188 App. Div. 215.) The allowance of commissions has been uniformly approved on total income, including total rentals of real estate. (*Hancox* v. *Meeker*, 95 N. Y. 528; *Matter of Mason*, 98 N. Y. 527; *Matter of Selleck*, 111 N. Y. 284; *Matter of Willets*, 112 N. Y. 289; *Matter of*

*Martin*, 196 N. Y. 415; *Matter of Wendel*, 273 N. Y. 532; *Matter of Brennan*, 251 N. Y. 39; *Matter of Knight*, 124 Misc. Rep. 430; *Matter of Byrnes*, 160 Misc. Rep. 895; *Matter of Rohr*, 145 Misc. Rep. 382; *Akers* v. *Fidelity & Col. Trust Co.*, 234 S. W. Rep. 725; *Russell* v. *Hilton*, 37 Misc. Rep. 642.) The word " manage " does not include " leasing," and " management " does not include the obtaining of tenants and negotiating leases. (*People* v. *Ahearn*, 196 N. Y. 221; *Matter of Emerson* v. *Buck*, 230 N. Y. 380; *Gardiner* v. *Butler & Co.*, 245 U. S. 603; *People* v. *Wainwright*, 237 N. Y. 407; *Wells* v. *Disbrow*, 20 N. Y. Supp. 518; *Matter of Byrnes*, 159 Misc. Rep. 302; *Matter of Knight*, 124 Misc. Rep. 430; *Matter of Brennan*, 251 N. Y. 39.) Commissions to real estate brokers for obtaining tenants and negotiating leases constitute " just, reasonable and necessary expenses " for which the Surrogate must allow reimbursement to the trustee. (*Matter of Wagner*, 40 Misc. Rep. 490; *Matter of Saunders*, 77 Misc. Rep. 54; 156 App. Div. 891; 211 N. Y. 541; *Wall* v. *Boston Safe Deposit Co.*, 150 N. E. Rep. 220; *Matter of Bielby*, 91 Misc. Rep. 353; *Matter of Saunders*, 77 Misc. Rep. 54; 156 App. Div. 891; 211 N. Y. 541; *Hancox* v. *Meeker*, 95 N. Y. 528; *Downing* v. *Marshall*, 37 N. Y. 380; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.*, 129 N. Y. 27; *Matter of Maxwell*, 218 N. Y. 88; *Matter of Boulware*, 144 Misc. Rep. 235.)

*Maxwell Brandwen, S. Sheldon Meyers* and *Ambrose Doskow* for Laurette Schinasi et al., respondents and appellants. The services for which a trustee is paid five per cent of gross rents under subdivision 9 of section 285 of the Surrogate's Court Act include all services in connection with the leasing of property. (*Matter of Arnolt*, 127 Misc. Rep. 579; *Matter of Knight*, 124 Misc. Rep. 430; *Matter of Althouse*, 122 Misc. Rep. 279; *Matter of Wendel*, 159 Misc. Rep. 900; 248 App. Div. 713; 273 N. Y. 532; *Collier* v. *Munn*, 41 N. Y. 143; *Matter of Hayden*, 54 Hun, 197; 125 N. Y. 776; *Matter of Froelich*,

122 App. Div. 440; 192 N. Y. 566; *Matter of Harbeck*, 81 Hun, 26; 145 N. Y. 648; *Matter of Binghamton Trust Co.*, 87 App. Div. 26; *Matter of Quinn*, 16 Misc. Rep. 651; *Wells* v. *Disbrow*, 20 N. Y. Supp. 518; *Matter of Nesmith*, 140 N. Y. 609; *Savage* v. *Sherman*, 24 Hun, 307; *Matter of Brennan*, 251 N. Y. 39; *Palmer* v. *Cheseboro*, 55 Conn. 114; *Watson* v. *Cleveland*, 21 Conn. 538; *Ure* v. *Ure*, 185 Ill. 216.) The trustee of an estate which includes real property has a choice between managing that property itself and placing it in the hands of agents. When it elects to manage the property itself, it must do so for the rates allowed by statute; when it employs agents, they are to be paid from the five per cent of the gross rents which the trustee receives. (*Matter of Byrnes*, 159 Misc. Rep. 302; *Beard* v. *Beard*, 140 N. Y. 260; *Matter of Froelich*, 122 App. Div. 440; 192 N. Y. 566.) Payment for the performance of services for which the trustee is compensated does not constitute " just, reasonable and necessary expenses," which the trustee may charge to the estate. (*Matter of Owen*, 144 Misc. Rep. 688; *Matter of Lester*, 172 App. Div. 509; *Matter of Hallock*, 214 App. Div. 323; *Matter of Van Nostrand*, 3 Misc. Rep. 396; *Matter of Arkenburgh*, 13 Misc. Rep. 744; *Matter of Larrabee*, 98 N. J. Eq. 655; *Matter of Quin*, 1 Connoly, 381; *Parker* v. *Leighton*, 131 Md. 407; *Jacobs* v. *Jacobs*, 99 Mo. 427.) The words " for receiving and paying out all sums " have been interpreted to allow commissions only on the net sums available for the beneficiaries. (*Green* v. *Winter*, 1 Johns. Ch. 26; *Matter of Kellogg*, 7 Paige Ch. 265; *Matter of Mercantile Trust Co.*, 210 N. Y. 83; *Matter of Horner*, 126 Misc. Rep. 772; *Farmers' Loan & Trust Co.* v. *Turner*, 242 N. Y. 240; *Matter of Dean*, 86 N. Y. 398; *Baucus* v. *Stover*, 24 Hun, 109; 89 N. Y. 1; *Matter of Farrington*, 149 Misc. Rep. 691; *Matter of Mills*, 149 Misc. Rep. 389; 239 App. Div. 817; 263 N. Y. 574; *Matter of Butterworth*, 158 Misc. Rep. 477; *Matter of Johnson*, 156 Misc. Rep.

689; *Matter of Hayden,* 54 Hun, 197; 125 N. Y. 776; *Beard* v. *Beard,* 140 N. Y. 260.) Subdivision 7 of section 285 requires that commissions be based on net income. (*Hancox* v. *Meeker,* 95 N. Y. 528; *Matter of Mason,* 98 N. Y. 527; *Matter of Selleck,* 111 N. Y. 284; *Matter of Martin,* 196 N. Y. 415; *Conger* v. *Conger,* 105 App. Div. 589; 185 N. Y. 554; *Matter of Norton,* 58 Misc. Rep. 133; *Behan* v. *People,* 17 N. Y. 516.) Commissions are to be computed on net income. (*Matter of Hayden,* 54 Hun, 197; 125 N. Y. 776; *Beard* v. *Beard,* 140 N. Y. 260; *Matter of Sidenberg,* 204 App. Div. 255.)

*Thomas B. Fenlon, Herbert Carter, Albert B. Maginnes, John E. Lockwood, Edwin W. Cooney* and *H. Vincent Smart* for Bank of New York and Trust Company et al., *amici curiæ.* Commissions must be computed upon gross rents. (*Matter of Swartz,* 162 Misc. Rep. 46; *Matter of Lathers,* 122 Misc. Rep. 543.)

LEHMAN, J. The testator, Morris Schinasi, died on September 10, 1928. By his last will and testament he devised all his residuary estate to Chemical National Bank of the City of New York in trust to pay the income to his wife and daughters. Three parcels of real property became part of the trust fund. The trustee managed the real property, collected the rentals and paid out the expense of carrying and maintaining it. In 1935 the trustee filed an intermediate account as trustee for the period from March 1, 1929, to July 31, 1935. A dispute has arisen concerning the amount of the commissions and allowance to which the trustee is entitled.

The account shows that, during the six years of its management, the trustee has collected rentals from the real property in the amount of $342,186.75. It has during the same period paid out for taxes, insurance, repairs and other expenses the sum of $231,503.43. The trustee claims commissions on the gross rentals received. The courts below have held that the trustee is entitled to commissions computed only upon net rentals.

The statute (Surrogate's Court Act, § 285) fixes the commissions and compensation to which a trustee is entitled. Until 1817 no statute or court rule provided for such compensation and a trustee could not demand "compensation beyond what may be founded on the positive agreement of the party." (*Green* v. *Winter*, 1 Johns. Ch. 26.) Then the Legislature provided by statute "That it shall be lawful for the court of chancery, in the settlement of the accounts of guardians, executors and administrators, on petition or otherwise, to make a reasonable allowance to them for their services as such guardians, executors and administrators, over and above their expenses; and that when the rate of such allowance shall have been settled by the chancellor; it shall be conformed to in all cases of the settlement of such accounts." (Laws of 1817, ch. 251.) Pursuant to the statute Chancellor KENT on October 16th, 1817, made an order "That the allowance settled by the chancellor as a compensation for guardians, executors and administrators, in the settlement of their accounts under the act of the legislature, for receiving and paying money, shall be five per cent. on all sums not exceeding one thousand dollars, for receiving and paying out the same; two and a half per cent. on any excess between one and five thousand, and one per cent. for all above five thousand dollars (3 Johns. Ch. 630)." For more than a century the Chancery rule has been embodied in a statute. The statute, now in force in this State, provides somewhat different rates but in formulating the rates it uses substantially the same language. "On the settlement of the account of any executor, administrator, guardian or testamentary trustee * * * the surrogate must allow to such executor, administrator, guardian or testamentary trustee for his services in such official capacity * * *. (1) For receiving and paying out all sums of money not exceeding two thousand dollars, at the rate of five per centum. (2) For receiving and paying out any additional

sums not amounting to more than twenty thousand dollars, at the rate of two and one-half per centum. (3) For receiving and paying out any additional sums not exceeding twenty-eight thousand dollars at the rate of one and one-half per centum. (4) For all sums above fifty thousand dollars, at the rate of two per centum." (Surrogate's Court Act, § 285, subds. 1 to 4.)

In the statute above quoted the Legislature authorized an allowance to fiduciaries only at a rate " settled " by the Chancellor which " shall be conformed to in all cases." The rate was to be definitely fixed and no room left for variation in particular cases. " The advantages of a fixed rate of allowance are obvious. Such a rate has the effect of law, it is known and uniform, it governs all classes, and it renders litigation unnecessary." (*McWhorter* v. *Benson*, Hopkin's Ch. Rep. 28, 38 [1823], 2d ed.) Time has mocked the conclusion of the learned Chancellor that a fixed rate of allowance " renders litigation unnecessary." After the lapse of more than a century there is still litigation and difference of opinion as to the basis upon which the rate shall be computed. The courts early perceived that the words " receiving and paying out," if literally construed, are comprehensive enough to include receipts and payments of every kind and description and that in some cases such a construction would produce a result which would be unreasonable and evidently unintended by the Chancellor or the Legislature. In such cases the courts have rejected a literal construction and have adopted a construction less unreasonable and more consonant with common sense. Even so, in each case the quest has been for the intention of the Legislature as formulated by it in the language of the statute and the courts may not reject a literal construction unless it is evident that a literal construction does not correctly reflect the legislative intent, as indicated by the general purpose and history of the statute and its language, read as a whole and not word by word.

Under a literal construction, a trustee would be entitled to commissions on moneys received by him upon every sale of a capital investment and upon moneys paid out by him when that money is reinvested. If the investments of a trust fund were changed every year a trustee would then be entitled to commissions every year. Such a construction might make a trustee the principal beneficiary of the trust. In *Matter of Kellogg* (7 Paige Ch. 265, 267 [1838]) Chancellor WALWORTH pointed out that this was not the intent of the statute, saying: " The investment or reinvestment of the fund, from time to time, upon new securities for the purpose of producing an income therefrom, is not such a paying out of the trust monies as entitles the guardian or trustee to commissions for paying out the same, within the intent and meaning of the statute on this subject; unless such securities are finally turned over to the *cestui que* trust as money, or otherwise applied in payment on account of the estate. Neither is the guardian or trustee entitled to charge a new commission for the collecting or receiving back of the principal of the fund which he has so invested. But he will be entitled to commissions upon the interest or income of the fund produced by such investments, and received and paid over by him."

The rule of that case has been followed in all subsequent cases. (Cf. *Valentine* v. *Valentine*, 2 Barb. Ch. 430.) The rule was expressly approved by this court in *Drake* v. *Price* (5 N. Y. 430) and has not been challenged since. It has been extended by analogy to cases where the fund includes property which is subject to a lien, *e. g.*, stock bought by a decedent on margin, *Matter of Mercantile Trust Co.* (210 N. Y. 83); real property, subject to a mortgage, *Farmers' Loan & Trust Co.* v. *Turner* (242 N. Y. 240); securities pledged by a decedent as collateral for a loan, (*Matter of Mills*, 149 Misc. Rep. 389; affd., 239 App. Div. 817; affd., 263 N. Y. 574). In such cases the fiduciary receives commissions only upon

the moneys realized for the property and received by the fiduciary after the lien has been satisfied. The rule of these cases was applied, however, only to moneys received for property which constitutes the corpus of a fund. Only by analogy can it be applied to income or profits of a fund. In three cases in the appellate courts of this State the courts have had occasion to consider the manner in which commissions should be computed upon income or profits; and it is upon the authority of these three cases that the courts below have determined in this case that commissions may be allowed only upon the net income of the estate.

In *Matter of Hayden* (54 Hun, 197; affd., 125 N. Y. 776) executors authorized by a testator to carry on his furniture business for a year claimed commissions on the amount received and disbursed in the business, though the business made no profit. In rejecting this claim the General Term said: " The buying and selling incident to the conduct of a manufacture or other business is, at best, a species of reinvestment of the trust funds. If commissions were to be allowed each time a stock in trade were purchased or sold, it is quite probable, as well as possible, for a case to arise where the executor's commissions would largely consume the body of the estate. Especially where the stock in trade is rapidly turned over, and no great profit is realized from the transactions. It is quite manifest that the claim for commissions on the $58,844.36 was properly disallowed " (p. 205).

In *Beard* v. *Beard* (140 N. Y. 260) the court again was called upon to determine whether trustees are entitled to commissions on the amount " received and disbursed " in a warehouse business carried on by them on property owned by the testator, in accordance with the directions of their testator. In that case the gross receipts were $600,000 and the net profit was $300,000. Upon the authority of the *Hayden* case the executors were allowed commissions only on the net profits of the business.

They sought to distinguish the *Hayden* case on the ground that the rule laid down there and in the *Kellogg* case (*supra*) " applies only to the investment and re-investment of the capital of the estate " and not to a business which does not manufacture or purchase and sell a stock in trade.

This court rejected that distinction, saying: " The rule is not thus confined, and it was not so confined in the *Hayden* case, and the principle underlying the decision in those cases requires that it should be applied to such a case as this. * * * We think the true rule for allowance of statutory commissions is this: Trustees are entitled to commissions for receiving all moneys which constitute the *corpus* of the estate, and any additions thereto from increase of any kind, and thus the moneys upon which commissions are to be computed can never exceed the gross amount of the estate and its net income; and the moneys paid out upon which commissions may be computed are the moneys paid out of the estate for debts, expenses of administration and to legatees or other beneficiaries, moneys which operate to diminish the estate as it exists in the hands of the trustees and pass out of and away from the estate. This rule excludes commissions upon investments and re-investments and moneys disbursed and received in the conduct of a business carried on to produce net income. In the case of such business, the commissions are to be computed on the net income only which came to the *corpus* of the estate as an increase thereof " (p. 264).

" *In the case of such business* " the courts have, since that decision, invariably computed commissions " on the net income only which came to the corpus of the estate as an increase thereof," even where such business has been conducted in connection with real property which formed part of the corpus of the estate. (Cf. *Matter of Sidenberg*, 204 App. Div. 255, where the fiduciaries maintained a hotel upon such property.) No case before the

recent decision in *Matter of Byrnes* (159 Misc. Rep. 302) has been called to our attention where the rule has been applied to exclude commissions upon moneys received as rental from real property held in trust and upon moneys disbursed to carry and maintain the property. In *Matter of Byrnes* (*supra*) Surrogate DELEHANTY held that the rule formulated in *Beard* v. *Beard* (*supra,* p. 265) excludes commissions not only as there decided upon " investments and reinvestments and moneys disbursed and received in the *conduct of a business carried on to produce net income,*" but also on moneys disbursed and received in the management of real property. In *all* cases, so the Surrogate held, commissions allowed under the first four subdivisions of section 285 of the Surrogate's Court Act " are related to and are payable only in respect of the corpus or capital of an estate " and " it is only an accretion to capital or a diminution of capital by way of capital payment which furnishes a basis for such commissions at all " (p. 306). Surrogate FOLEY in *Matter of Swartz* (162 Misc. Rep. 46) took another view, and pointed out that the rule of the *Byrnes* case was opposed to the practice followed generally in this State for more than a century.

In considering the problem underlying this difference of opinion it must be remembered that it concerns only commissions authorized under the first four subdivisions of section 285. Subdivision 9 (added to section 285 by chapter 649 of the Laws of 1923 and amended by chapter 892 of the Laws of 1934) provides that " where an executor, administrator, guardian or testamentary trustee is, for any reason or cause whatsoever, entitled or required to collect the rents of and manage the real property, he shall be allowed and may retain *five per centum of the rents collected therefrom in addition to the commissions herein provided.*" Under that subdivision the trustee is, concededly, entitled to and has been allowed compensation calculated upon *rents* collected. The words we

have italicised leave no doubt as to the basis upon which that compensation is to be computed. They leave no doubt also that this allowance or compensation is *in addition to the commissions* provided by the earlier subdivision and was not intended to change the rate or basis of those commissions. If before the additional compensation was provided trustees were entitled to commissions on gross rentals received and disbursed by them, then undoubtedly these commissions were not changed by the grant, in some cases, of additional compensation.

It may be conceded that there are expressions in the opinion in *Beard* v. *Beard* (*supra*) which lend some support to the decision of Surrogate DELEHANTY in this case, affirmed by the Appellate Division. Even so, indication may be found in the language of the opinion that the rule there formulated for computing commissions, though expressed in general terms, was intended to apply only to moneys received and disbursed in connection with investments and reinvestments of capital and in the conduct of a business, and that in other cases the statutory commissions must be allowed, in literal compliance with the language of the statute, " for receiving and paying out all sums of money."

The members of the bar and the judges of the courts have so construed the decision in *Beard* v. *Beard*. In many cases since that time commissions upon gross rentals received from real property have been allowed without objection or question. That has been the general practice in the Surrogates' Courts (See *Matter of Swartz, supra*), and has been followed in many cases which have been reviewed in this court and other appellate courts. Indeed, even in the case of *Beard* v. *Beard*, though the referee decided that commissions might be computed only upon the net profits of the *business* conducted by the fiduciaries in connection with real estate of the decedent, yet, to arrive at the net profits, no deductions were made for expenses which would have been necessary even if the business had not been conducted; that is, for

the actual carrying charges of the real property owned by the decedent and used in the business. (Cf. *Matter of Martin*, 196 N. Y. 415, and the recent case of *Matter of Wendel*, 273 N. Y. 532.)

It is true that in these cases and in the cases cited by counsel in the other courts of the State where, since the decision in *Beard* v. *Beard*, commissions were allowed on gross rentals from real property, the right to such commissions was not challenged or directly passed upon in the courts. This court had said before the decision in *Beard* v. *Beard* that " the authorities hold that where the account is rendered yearly * * * such accounting party is entitled to full commissions on *each year's receipts and disbursements* " (*Hancox* v. *Meeker*, 95 N. Y. 528, 539), and, again, that " We are of opinion that where a trustee is required to keep trust funds invested and to receive and pay out the income annually, and he receives the income and renders an account thereof to the beneficiary, and pays over the *balance of the income*, after deducting all expenses chargeable against the same, he has the right to deduct for his compensation full commissions on the income *annually received*, before paying it over." (*Matter of Mason*, 98 N. Y. 527, 535.) (Italics in both citations are new.) After the decision of *Beard* v. *Beard* the rule, as stated in these earlier cases, continued to be generally applied to income received from real property and disbursements for carrying charges and maintenance of such property. It is said that the practice was due to a general failure by members of the bar to recognize the scope of the decision in *Beard* v. *Beard*, and that no appellate court gave considered approval to the practice. That may be true, but it is significant that the court which decided *Beard* v. *Beard* never felt called upon to point out in any later opinion that the prevailing practice was contrary to the law it had enunciated.

The construction of a statute accepted for over a century without serious challenge should not be changed

by the court without compelling reason. The argument that, since the adoption of subdivision 9 of section 285, this construction would in some instances result in an excessive allowance to fiduciaries, should be addressed to the Legislature rather than the courts, and there may be difference of opinion even there. Other arguments, not without force, have been advanced by the respondents and accepted by the Appellate Division. Such arguments must be weighed in the balance against the arguments advanced by the appellants. When so weighed they are insufficient, in our opinion, to constrain or justify the court in rejecting a literal construction of the language of the statute and the century-old practice based on such construction.

The trustee in his account asked credit for brokerage commissions amounting to $4,751.25 paid for brokerage commissions in obtaining lessees for some of the real property. A trustee is ordinarily not qualified to act as broker in obtaining tenants for real property. Like other persons who manage real property, he may at times obtain a tenant without the intervention of a broker, but ordinarily a trustee who manages vacant property will avail himself of the services of a broker. Indeed, a trustee might be charged with failure to use proper care if he failed to do so. The Appellate Division has held that the brokerage commission paid constitutes a disbursement necessarily incurred by the trustee for specialized services which did not form part of the " management " of the property required of the trustee and for which the trustee receives, under the statute, compensation measured by five per centum of the rents collected. We agree with that conclusion.

The order of the Appellate Division should be modified as indicated in this opinion and the matter remitted to the Surrogate's Court for the entry of an appropriate decree, with costs to all parties filing separate briefs payable out of the estate.

CRANE, Ch. J. (concurring). I concur in the prevailing opinion.

There is much force in the argument presented in Judge LOUGHRAN's opinion and the view taken of this matter of commissions by the Surrogate in *Matter of Byrnes* (159 Misc. Rep. 302). It is somewhat difficult at times to draw the line between the management of a large apartment house, including the moneys expended for maintenance, upkeep and repairs, and the running of a business. However, the distinction seems to have been drawn, without much discussion, it is true, and the allowance of commissions on the basis stated in the opinion by Judge LEHMAN has at least found recognition by this court in *Matter of Wendel* (273 N. Y. 532). Not until recent years has this question of figuring commission on the maintenance and upkeep of large real estate properties been challenged, or the meaning of section 285 of the Surrogate's Court Act doubted in its application to such a situation.

In view of what has now been said on both sides and the arguments now pressed forward, I am inclined to adhere to the practice as it has been, leaving it to the lawmakers to express more clearly their intent if our decision be not in harmony with it.

LOUGHRAN, J. (dissenting in part). The principal question presented is whether so-called normal or regular commissions to be awarded to trustees for the management of real estate are to be computed on gross rents or net. (See Surr. Ct. Act, § 285, subds. 1–4.)

I agree with the courts below that the answer was given in *Beard* v. *Beard* (140 N. Y. 260). In that case EARL, J., said for the court: " We think the true rule for allowance of statutory commissions is this: Trustees are entitled to commissions for receiving all moneys which constitute the *corpus* of the estate, and any additions thereto from increase of any kind, and thus the moneys upon which commissions are to be computed can never

exceed the gross amount of the estate and its net income; and the moneys paid out upon which commissions may be computed are the moneys paid out of the estate for debts, expenses of administration and to legatees or other beneficiaries, moneys which operate to diminish the estate as it exists in the hands of the trustees and pass out of and away from the estate " (p. 265). These are plain and emphatic words. The rule so stated cannot, in itself, be made to bear the meaning that gross rents are the base upon which commissions are to be allowed for real estate management.

Not less clear is the reason for the rule of the *Beard* case. Under another standard a trust estate might well be lost. We need not go outside this record for an illustration. In the management of real estate, each parcel is ordinarily handled as a separate unit. . (*Matter of Chapal*, 269 N. Y. 464.) The three parcels here involved are so treated in this account. One parcel (the residence property at Larchmont, N. Y.) was operated throughout the period accounted for at a continuing deficit. It is purely accidental that other estate assets produced enough income to absorb this loss. Had the Larchmont property been the sole estate asset, then the trust *corpus* and that alone could have been the source of commissions, if chargeable on gross rents.

The now accounting trustee nevertheless asserts that computation of commissions on a net rent base would be contrary to a practice generally followed in this State for more than a century. This is a strong thing to say. Not an item of proof of such a sweeping generality is to be found in the record. For all that there appears, any number of fiduciaries may have taken commissions on net rents during the last century.

But, however that may be, the fact is, as this court now says, that in cases in which commissions were taken on gross rents, " the right to such commissions was not challenged or directly passed upon in the courts." What

then was so decided? " The most that can be said is that the point was in the cases if anyone had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (*Webster* v. *Fall*, 266 U. S. 507, 511.) Indeed, where a practice had been buttressed by a " multitude of cases in intermediate appellate courts in this State," the question in this court was not how long the practice had been going on. Even there the question in this court was whether the practice was right. (*Prudence Co.* v. *160 W. 73rd St. Corp.*, 260 N. Y. 205, 209.) In that case, " We disapproved a long-continued practice in foreclosure proceedings, founded, as we believed, upon erroneous decisions of intermediate appellate courts." (*Sears, Roebuck Co.* v. *9 Ave.-31 St. Corp.*, 274 N. Y. 388, 401.) These citations seem to me to show that there is no force in the argumentation that a unilateral habit of trustees in taking their own commissions (not directly passed on by any court) must here be deemed to be the overriding ultimate authority.

Thus we are free, as I see it, to leave the uniform law as we find it limpidly stated in *Beard* v. *Beard*.

I am persuaded also that the Legislature has accepted the opinion of this court in the *Beard* case as declaratory of the rule governing the compensation of fiduciaries.

In case after case the courts have held that in respect of business management commissions were payable only on net return. So it was ruled in respect of a furniture business (*Matter of Hayden*, 54 Hun, 197; 125 N. Y. 776); in respect of a wharfage and warehouse rental business (*Beard* v. *Beard, supra*); and in respect of a hotel and store rental business (*Matter of Sidenberg*, 204 App. Div. 255). In the management of real estate there are no problems comparable in complexity to those that must have been solved by the trustees in the *Beard* case in successfully operating the Erie Basin enterprise, with a two-year gross income of over $600,000 from wharfage

and warehouse rentals alone. Certainly any difficulties which confronted the now accounting trustee in the management of the three parcels here involved were negligible in comparison. The Larchmont residence property was let out for the summer seasons. The hotel property was rented for $25,000 per year plus fifty per cent of gross intake in excess of $115,000. The property in Greece was under lease to the American Tobacco Company.

When the *Hayden* and *Beard* cases had long been in the law the Legislature, in 1923, added to section 285 of the Surrogate's Court Act what is now subdivision 9 thereof, as amended. It is thereby provided: " Where an executor, administrator, guardian or testamentary trustee is, for any reason or cause whatsoever, entitled or required to collect the rents of and manage the real property, he shall be allowed and may retain five per centum of the rents collected therefrom in addition to the commissions herein provided." By this enactment, fiduciaries who manage real estate are assured the receipt of a management fee greater than that currently paid (at least in some localities) to non-fiduciaries. It seems to me to be incredible that the Legislature could have supposed that to this presumably gainful five per cent management fee there would be added two, four and six per cent commissions on gross rents. (See Surr. Ct. Act, § 285, subd. 8.) Real property in general could hardly carry itself and pay so high a tariff for management. I believe it was never intended that a trust was to be so administered as thus to guarantee such a profit to the fiduciary, though as a result nothing should be left for beneficiaries.

For the foregoing reasons I vote to affirm the order of the Appellate Division.

CRANE, Ch. J., concurs in opinion with LEHMAN, J.; O'BRIEN and FINCH, JJ., concur in the opinions of CRANE, Ch. J., and LEHMAN, J.; LOUGHRAN, J., dissents in opinion in which RIPPEY, J., concurs; HUBBS, J., taking no part.

Ordered accordingly.