In the Matter of the Application of JESSIE HUTTON, Petitioner, for an Order against FRED L. HEITZMANN, Commissioner of Charities and Correction, Erie County, New York, Respondent.

Supreme Court, Erie County, September 5, 1939.

*Leo C. Gabriel*, for the petitioner.

*Paul J. Batt* [*Edward D. Siemer* of counsel], for the respondent.

Lytle, J. By a petition verified March 15, 1939, and a notice of motion dated March 17, 1939, the above-named Jessie Hutton has made application for an order in the nature of mandamus, peremptory or alternative, directing Fred L. Heitzmann, commissioner of charities and correction of the county of Erie, to reinstate the petitioner to her former position of nurse and floor supervisor of the Wende Home and Infirmary and to pay to her an amount equivalent to her salary since her removal on February 15, 1939.

By a notice of motion dated April 6, 1939, the respondent has moved to dismiss the petition upon the ground that the same does not state facts sufficient to entitle the petitioner to the relief asked or to any relief.

The petition alleges that petitioner was appointed to said position in January, 1931, and that until the time of her removal she rendered satisfactory service; that prior to receipt by her of a notice of her removal she was given no notice of or hearing upon stated charges.

The petition further alleges that the petitioner is an honorably-discharged veteran of the World war, and in support of this allegation there is appended to the petition certain documents that indicate that the petitioner entered upon service in the United States Army Nurse Corps on August 13, 1918, was actively engaged therein, and was relieved from active service July 23, 1919.

Petitioner lays no claim to the rights attaching to a position in the competitive class by the force of subdivision 2 of section 22 of the Civil Service Law; that the position from which petitioner was removed was in the non-competitive class does not appear to be questioned.

Is the petitioner " an honorably-discharged soldier, sailor or marine " as those words are employed in subdivision 1 of section 22? If so she is entitled to relief in this proceeding; if not, the proceeding must be dismissed.

Respondent, as Commissioner Heitzmann probably should be termed herein (Civ. Prac. Act, art. 78; *Matter of Village of Asharoken* v. *Flynn*, 230 App. Div. 750), raises no question as to the honorable discharge of petitioner at the termination of her services during and after the World war. Accordingly, the consideration is limited to the question posed in the preceding paragraph. The answer to the question must be found in the legislative intent shown by the above-quoted words of section 22 of the Civil Service Law. " The cardinal rule for the construction of legislative acts is to ascertain the intent of the Legislature." (*People ex rel. Steckler* v. *Warden of City Prison*, 259 N. Y. 430, 433.)

Legislative intent is a chimera of our jurisprudence to be pursued with little assurance of success by any but a court of last resort.

(Compare *People* v. *Ryan*, 274 N. Y. 149, revg. 248 App. Div. 236.) The blazes on the trail of such pursuit are numerous and frequently conflicting. Reference is often made to " the general purpose and history of the statute." (*Matter of Schinasi*, 277 N. Y. 252, 259.) Those acquainted in any considerable measure with the practical workings of the legislative process know that many phases and aspects of the " general purpose and history " of a given legislative enactment are and necessarily will be entirely outside the information supplied to the construing court. The machinery to supply the same is wholly lacking. Often such facts and aspects constitute the motivating force in the inception of a bill and in its ultimate passage. Therefore, a decision involving the construction of a statute may necessarily turn upon facts which are not before the court in a form recognized as legal proof. This situation presents a strong argument for a rule of construction that would limit the court to an examination of the words employed and their context.

Subdivision 1 of section 22 of the Civil Service Law confers a benefit or privilege upon a limited class of persons. Experience amply demonstrates that this type of legislation usually has the support of the class thereby to be benefited. More certainly it may be said that this legislation was not intended or calculated to benefit a class of persons not in existence and as such recognized at the time when legislative intent was being crystalized into words and law.

When words, important words describing the objects of its application, are employed verbatim in a statute succeeding or supplanting a prior statute of the same general character and purpose, it is safe to assume that the cause of the selection of such words is their presence and use in the prior enactment. Consequently, the search for the legislative intent manifested in the repeated words is directed back to the earlier statute. The words " an honorably-discharged soldier, sailor or marine " have been carried unchanged through the various subsequent enactments just as they appeared in the original Civil Service Law of this State (Laws of 1899, chap. 370).

Counsel for petitioner advises that nurses were not part of the military forces in 1899. He does not contend that " soldier, sailor or marine " was intended at that time to apply to any class of nurses then in existence. It is, therefore, clear that when the Legislature first chose those words it did not intend to embrace nurses in the categories affected.

The present statute, or, perhaps, more correctly the statute in its present form, became law as chapter 774 of the Laws of 1937, at a time, it should be noted, when " nurse " was a recognized

category apart from " soldier, sailor or marine " in the Civil Service Law of this State. (Laws of 1924, chaps. 632, 634; Laws of 1930, chap. 374.) If the Legislature had intended to provide for such persons in said section 22 reference thereto could have been made by inserting or adding " war nurse " or equivalent words. Whether the omission was intentional or an oversight matters not; the ultimate result is the same: no provision was made. The court cannot substitute by judicial interpretation that which must be brought into existence by legislative expression. The Appellate Division, First Department, declined to extend what was substantially the statute before this court to an honorably-discharged soldier who had not, however, served in " the regular army or navy of the United States " in the War of the Rebellion or the Spanish war. (*People ex rel. O' Keefe* v. *Hynes,* 101 App. Div. 453.)

If the wording of section 22 of the Civil Service Law includes nurses, as petitioner contends, it would follow that the word " nurse " is surplusage in sections 14-a and 16-b of said law, and similarly the word " nurses " used several times in section 21.

Petitioner argues that she received a soldiers' bonus. However, in describing the intended recipients of the World war veterans' adjusted compensation (the so-called bonus), the Congress of the United States employed the words " any individual, a member of the military or naval forces of the United States." (U. S. Code, tit. 38, § 592.)

In treating of so-called war risk insurance, the Congress saw fit to make provision for " every commissioned officer and enlisted man " and " every member of the Army Nurse Corps (female) and of the Navy Nurse Corps (female) when employed in active service under the War Department." (U. S. Code, tit. 38, § 511.) (See, also, U. S. Code, tit. 38, § 312.)

I hold that the provisions of subdivision 1 of section 22 of the Civil Service Law do not apply to this petitioner. Petition dismissed upon the merits, but without costs. (Civ. Prac. Act, §§ 1300, 1301.)

Prepare and submit an order accordingly.