OPINION OF THE COURT
Andrea Masley, J.
*418 Respondent Darlene Pugh moves to vacate the final order of protection in favor of petitioner Lloyd Grant entered on default when Ms. Pugh failed to appear on August 18, 2008.[1] Respondent denied that she was served with any papers. Neither party is represented by counsel. The court held a traverse hearing on December 12, 2008.[2]
On August 15, 2008, Mr. Grant filed a family offense petition alleging that on August 8, 2008[3] at Bronx County Family Court, Ms. Pugh threatened Mr. Grant when they were leaving the courtroom following their appearances in Part 14 on a delinquency action against their son DG. Ms. Pugh was immediately escorted out of the Family Court building by court officers, but not arrested. The parties were scheduled to appear again in the delinquency matter on August 18, 2008. The court issued an ex parte temporary order of protection to Mr. Grant returnable three days later, on August 18, 2008, on the same date as the delinquency matter. On August 18, 2008, Mr. Grant and the attorney for the child appeared and informed the court that Ms. Pugh had been present earlier on August 18, 2008 for her son’s delinquency proceeding in Part 14. The notarized affidavit of service provides that Kecia Jefferson served Ms. Pugh on August 18, 2008 at 9:30 a.m. at the Family Court on 161st Street in the Bronx with the petition and temporary order of protection. When Ms. Pugh failed to appear in Part 3 on August 18, 2008, the court held an inquest at 12:10 p.m., made findings of fact, and issued a final order of protection on default based on Mr. Grant’s credible testimony regarding the August 7 incident.
On October 23, 2008, Ms. Pugh filed a motion to vacate the final order of protection. Under CPLR 5015, an order entered *419 on default may be vacated upon the showing of an excusable default. In her notarized affidavit in support, Ms. Pugh claims she was never served; she maintains she had no reason to be in the Bronx on August 18, 2008; alternatively she challenges the date on the affidavit of service as not correct; and denies having had any contact with Mr. Grant for 12 years.
On December 12, 2008, at the traverse hearing, Ms. Jefferson testified that she is 25 years of age. She knew Ms. Pugh because Ms. Pugh has a child with Mr. Grant, Ms. Jefferson’s father. Ms. Jefferson testified that she saw Ms. Pugh in front of the Family Court building on August 18, 2008 and attempted to serve Ms. Pugh but she went inside the lobby of the building. Ms. Jefferson followed her inside. When Ms. Pugh refused to accept service again, Ms. Jefferson dropped the papers at Ms. Pugh’s feet and stated, “You are served.” Ms. Jefferson testified credibly.
During the hearing on December 12, 2008, Ms. Pugh denied that she was ever served. First, she denied she was ever in the Bronx during the month of August 2008. However, she admitted that she was present for all delinquency proceedings involving her son. The court’s computer shows that proceedings in the delinquency matter, D-15947/07, were held on May 22, 2008, June 3, 2008, June 17, 2008, June 27, 2008, July 14, 2008, August 7, 2008, and August 18, 2008. She specifically recalled being present when her son was placed in Lincoln Hall, which according to court records occurred on August 18, 2008. Ms. Pugh denies that she has had any reason to have contact with Mr. Grant for 12 years. Mr. Grant states that he was present for all of the delinquency proceedings too. As Ms. Pugh simultaneously states that she appeared at seven court proceedings with their son, the credibility of her testimony is completely undermined by this inconsistency. Ms. Pugh’s denial of service at the hearing was inconsistent and completely incredible.
The only question remaining for the court is whether service on August 18 was improper because the summons and petition were served the same day as the return date.
Family Court Act § 826 (a) provides that a family offense petition “shall be [served] ... at least twenty-four hours before the time stated therein for appearance. If so requested by the respondent, the court shall not proceed with the hearing or proceeding earlier than three days after such service.” (Emphasis added.)
Family Court Act § 826 can be read in the following two ways:
*420 Interpretation A
(1) A temporary order of protection must be served at least 24 hours in advance, otherwise it is ineffective; and (2) regardless of when a temporary order of protection is served, respondent is entitled to an adjournment of three or more days. Or,
Interpretation B
If a temporary order of protection is served within 24 hours, then respondent is entitled to an adjournment of three or more days after such service.
Anecdotally, it has been reported to this court in other cases that the police have refused to serve temporary orders of protection within 24 hours of the return date, presumably based on Family Court Act § 826. The New York City Police Department’s interpretation of Family Court Act § 826 has forced petitioners alleging domestic violence, sufficient to get an ex parte exclusion order from the court, to go home to the respondent whom the court has ordered excluded from the home. However, for the reasons discussed below, the court concludes that interpretation B, the alternative that protects victims of domestic violence, is the interpretation intended by the New York legislature. Where a statute is subject to more than one interpretation, it is ambiguous. The court will turn to the legislative history of the statute to determine the legislature’s intent, goals and purpose. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92.) Legislative History of Family Court Act § 826
Family Court Act § 826 was enacted in 1962; the 24-hour provision has been unchanged ever since. Originally, section 127 of the Domestic Relations Court Act of the City of New York, enacted in 1933 and amended in 1944, provided with regard to orders of protection: “In all cases service of summons must be made within a reasonable time before the time stated therein for such appearance, as may be provided by the rules of the board.” (Emphasis added.) The source of the 24-hour provision in Family Court Act § 826 is the service provision in Children’s Court Act § 12, enacted in 1922, which stated with regard to permanently neglected children: *421 In 1962 when the Family Court Act was enacted, why was the “reasonable time” for service set forth in Domestic Relations Court Act § 127 rejected in favor of the 24-hour service provision of the Children’s Court Act? Why in adopting the language of section 12 was the word “but” removed and a period placed after the word “appearance?” An exhaustive review of the legislative history of the Family Court Act was unsuccessful in finding any explanation.[4] Rather, the reasons for the changes to the service statute in domestic violence cases appears to be one of expedience.
*420 “Service of said summons must be made at least twenty-four hours before the time stated thereon for such appearance, but the judge, if requested by a parent, or in case there is no parent, by the person having the custody of the child, shall not proceed with the hearing earlier than three days after service.” (Emphasis added.)
*421 There is not one word about Family Court Act § 826 in the 562-page transcript of the hearings regarding enactment of the Family Court Act and no discussion of section 826 in the written reports commenting on the enactment of the Family Court Act reviewed by this court, with one exception. The Committee on Family Law of the Association of the Bar of the City of New York complained about unnecessary language variations in provisions of the Family Court Act relating to issuance of summons and service of summons (Family Ct Act § 826) and the issuance of warrants (Family Ct Act § 827). “Greater uniformity of language could be achieved.” (Reports and Comments on Proposals of Joint Legis Comm on Ct Reorganization, Assn of Bar of City of NY, Special Comm on Reorganization of Cts, Mar. 1, 1962, at 39.) Similarly, there are many complaints about the haste with which the Family Court Act was traveling through the legislature toward enactment, causing unintended omissions. (Judge Phillip B. Thurston, Presiding Justice and Bd of Justices of Domestic Relations Ct of City of NY, transcript, Feb. 16, 1962, at 91; M.L. Rein, representing Supreme and Surrogate’s Ct Attaches Assn, transcript, Feb. 16, 1962, at 193 [“whoever drafted this worked in a hurry”]; James F. Tuohy, on behalf of the Archdiocese of NY, transcript, Feb. 16, 1962, at 207 [“time for review has not been adequate for the important purpose involved”]; Mrs. Jerome Schack, League of Women Voters, transcript, Mar. 1, 1962, at 93 [“It will indeed be a travesty of justice if, after the years of effort which have gone into achiev *422 ing the court reorganization amendment, mere pressure of time prevents this Committee from implementing it fully and properly”].) The Joint Legislative Committee stated:
“Limitations of time do not presently permit the rewriting of every section of the consolidated laws which, with the abolishing of these courts, will contain obsolete matter. Thus the effort has been directed to locate and revise those provisions of law which will no longer be susceptible of application as the legislature intended unless some substitute is found for the obsolete matter.” (Report of Joint Legis Comm on Ct Reorganization, No. 3, Intro Note, at 1 [Feb. 19, 1962].)
Accordingly, the legislative history does not resolve the ambiguity and the court turns to other sources demonstrating the legislature’s purpose in enacting the 24-hour service provision in domestic violence cases.
Analysis
Interpretation A is contrary to the legislature’s purpose of protecting victims of domestic violence. A temporary order of protection is effective when served, but interpretation A leaves petitioners unprotected for a full 24 hours. The time subsequent to service is the most dangerous for a victim of domestic violence as that is the time that the batterer becomes aware of the victim’s attempt to protect herself/himself.[5] It is the worst time to leave a victim unprotected. If a respondent is served with a temporary order of protection within 24 hours of the return date, is the order ineffective? Under interpretation A, the answer is yes. The court would be without jurisdiction over the respondent even though the respondent has notice of the order of protection. In Alix A. v Erika H. (45 AD3d 394 [1st Dept 2007]),[6] the Appellate Division held that the Family Court lacked jurisdiction over a petition for a violation of an order of protection which was served on the mother on the very same day that the violation petition was filed and the court found a violation without a hearing and issued a five-year order of protection as a result of the violation. It appears that the mother was present for a custody proceeding for which she was properly served and *423 over which the court had jurisdiction. It also appears that the mother was served with the violation petition by the court in the courtroom. Without a hearing, the Family Court not only transferred custody from mother to father, but the court found a violation of an earlier order of protection for the father, extended the final order of protection to five years and added the child to the order of protection. In the violation petition, the father did not request the ultimate relief awarded by the court. Given the trial court’s wholesale violations of the mother’s due process rights in Alix A., it is difficult for Alix A. to apply for any proposition other than that a party is entitled to due process. The due process violation would have been averted if the trial court had simply adjourned the case for at least three days from service as required by Family Court Act § 826 under interpretation B.
Interpretation A provides an unnecessary procedural safeguard to address the risk of erroneous deprivation of respondent’s constitutional rights since a postdeprivation hearing must be held by the court immediately. (CPLR 6313 [a].) Family Court Act § 842 (a) authorizes the court to exclude respondent upon consideration of whether “the order of protection is likely to achieve its purpose in the absence of such a condition.” Domestic Relations Law § 252 (8) authorizes exclusion upon a showing that immediate and irreparable harm will result without an exclusion.[7] A respondent who is excluded has a constitutional right to be heard immediately when excluded from the home by the court’s order of protection. (Fuentes v Shevin, 407 US 67 [1972] [14th Amendment violated when a state’s prejudgment replevin law authorizes seizure of goods by state agents based on private person’s civil complaint], reh denied 409 US 902 [1972]; Matter of Nadeau v Sullivan, 204 AD2d 913 [3d Dept *424 1994] [respondent not denied due process with issuance of ex parte temporary order of protection; there was no finding of wrongdoing]; People v Forman, 145 Misc 2d 115, 129 [Crim Ct, NY County 1989] [respondent is entitled to a prompt hearing after exclusion from the home].) “While these private interests are deserving of constitutional protection, the state’s extraordinary interest in protecting victims of domestic violence from actual or threatened injury and children from the effects of exposure to domestic violence justifies the use of immediate measures to stop the violence.” (Breger, Elkins and Fosbinder, New York Law of Domestic Violence, at 509 [2d ed 2007].) Courts often balance these interests and make exclusion orders returnable the next day to reduce the impact of the exclusion on the excluded respondent while at the same time protecting petitioner until both parties simultaneously appear before the court on the return date. The immediate hearing renders the procedural safeguard of interpretation A unnecessary.
Under interpretation A, the only way to address the 24-hour absence of protection would be for the court to issue ex parte at intake a warrant for respondent’s arrest under Family Court Act § 827. However, arrest is not always necessary to protect the petitioner. Rather, there is a less intrusive measure which is to exclude respondent and return the case to the court immediately. In contrast, under interpretation B, a temporary order of protection is effective even if service is made less than 24 hours before the return date. The court must reject interpretation A’s incongruous result. (See Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 675 [1988] [“This is not to say, however, that the language of a statute must in all circumstances be literally or mechanically applied when, due to significantly changed circumstances, such application would cause an anachronistic or absurd result contrary to the contextual purpose of the enactment”].)
The New York legislature has repeatedly demonstrated in a variety of statutes its understanding of the urgency of service of a temporary order of protection in a domestic violence case (McKinney’s Cons Laws of NY, Book 1, Statutes § 75 [other statutes are a consideration in legislative construction but are not controlling]). Other statutes demonstrate the legislature’s intent to protect victims of domestic violence from the moment the petitioner enters the courthouse. Any person requesting a temporary order of protection must be permitted to file a petition without delay on the same day or the next day that the *425 court is in session. (Family Ct Act § 153-c.) The Family Court is open in the evening to accommodate such filings. (Judiciary Law § 212 [2] [n].) Family Court Act § 153-b (a) allows for service on any day of the week and at any time, day or night. Family Court Act § 153-b (c) requires prompt service by the police and Family Court Act § 153-b (c) and Domestic Relations Law § 240 (3-a) require that the court “immediately” deliver a copy of the temporary order of protection to the police for service. While process in other cases cannot be served on Sunday (Judiciary Law § 5), or Saturday, if it is the Sabbath (General Business Law § 13), orders of protection may be served on any day and at any time. Consistent with these other statutes, in Family Court Act § 826, instead of making the temporary order of protection ineffective because it was served within 24 hours of the return date, the legislature makes the temporary order of protection effective but allows for an adjournment of at least three days after the short return date to allow respondents time to seek (1) help understanding the temporary order of protection and/or (2) legal assistance.
Interpretation B is also consistent with the general service statute. In all civil cases, process must be served by a nonparty who is 18 or over. (CPLR 2103 [a].) Otherwise, there is a lack of due process and the petition is dismissed. (Matter of Beverly E. v William H., 53 AD2d 891 [2d Dept 1976] [petitioner mother served respondent father with service in a support proceeding].) However, service by an improper person, though jurisdictionally defective, is an irregularity which may be waived or disregarded. (Ahner v New York, New Haven & Hartford R.R. Co., 14 NYS 365, 366 [NY City Ct, Gen Term 1891] [where defendant was served, but statute required sheriff to serve, objection to person who served is “trivial ... at most, and . . . not encouraged”].) Indeed, service procedures have been liberalized further. (Kjeldsen v Ballard, 52 Misc 2d 952 [Sup Ct, Suffolk County 1967] [defendant served again constitutes proper service nunc pro tunc].) For example in Dunne v Dunne (148 Misc 2d 136 [Fam Ct, Rockland County 1990]), where the father mailed the summons and petition to the mother in Florida in a Uniform Child Custody Jurisdiction Act case, the fact that the father himself mailed the papers was sufficient to confer jurisdiction because it was a mere irregularity rather than jurisdictional. This liberalization, where there is no question that respondent received the papers and was thus on notice, is consistent with the court’s preference to resolve issues on their merits. (Matter *426 of Kandel v State Div. of Human Rights, 70 AD2d 817, 818 [1st Dept 1979] [where petitioner employee served respondent employer, court found “mere irregularity” and moved on to address the issues of merit].)
The rules of statutory construction as well dictate that the court reject interpretation A in favor of B. Interpretation B gives effect to all of the language of Family Court Act § 826. “Such” service at the tail end of Family Court Act § 826 (a) must refer to service within 24 hours. Otherwise “such service” would mean any service or all service or simply service. Interpretation A renders the term “such” superfluous. However, courts must give meaning to every word of a statute. (Matter of Bliss v Bliss, 66 NY2d 382, 389 [1985] [“In the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give each a distinct and separate meaning”], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 231.)
As a literal construction, interpretation A does not correctly reflect the legislative intent. The court “may not reject a literal construction unless it is evident that a literal construction does not correctly reflect the legislative intent.” (Matter of Schinasi, 277 NY 252, 259 [1938], rearg denied 278 NY 624 [1938].) “The court must read and interpret the language of a statute in a way that furthers [the statute’s] goals and purposes.” (Matter of Commissioner of Social Servs. v Vito G., 171 Misc 2d 315, 318 [Fam Ct, Ulster County 1996].) Originally in 1962, the only reference to victims of domestic violence was found in Family Court Act § 811, “Finding and purpose,” which provided:
“In the past, wives and other members of the family who suffered from disorderly conduct or assaults by other members of the family or household were compelled to bring a ‘criminal charge’ to invoke the jurisdiction of a court. Their purpose, with few exceptions, was not to secure a criminal conviction and punishment, but practical help.
“The family court is better equipped to render such help, and the purpose of this article is to create a civil proceeding for dealing with such instances of disorderly conduct and assaults. It authorizes the family court to enter orders of protection and support and contemplates conciliation procedures. If the family court concludes that these processes are inappropriate in a particular case, it is authorized to transfer the proceeding to an appropriate criminal
*427 court.” (L 1962, eh 686, repealed by L 1981, eh 416, § 13.)
Family Court Act article 8’s goal of protecting victims of domestic violence has not changed in 45 years. Indeed, the legislature has articulated its goal much more clearly and enacted much more effective legislation. In 1986, the Office of the Prevention of Domestic Violence was established. In 1994, the legislature enacted the Family Protection and Domestic Violence Intervention Act which consisted of 50 substantive revisions including, inter alia, mandatory arrest, making a violation of certain orders of protection a felony criminal contempt, allowing for restitution up to $10,000, adding harassment in the first and second degrees and menacing in the second degree to the definition of family offense, and creating a statewide tracking of orders of protection. The court has a duty to harmonize Family Court Act § 826 with these other statutes. (McKinney’s Cons Laws of NY, Book 1, Statutes § 98.)
Reality renders the three-day adjournment under interpretation A meaningless.
“[B]ecause of the short time which a summons may specify for the respondent’s appearance (24 hours), subsection 826 (a) gives the respondent a right to a three day delay before the court can proceed with the case. ... Of course, the reality of high caseloads and large court backlogs means that the period of adjournment between the respondent’s appearance and the first ‘scheduled’ hearing may be a month, two months, and even three months — making the issuance of a temporary order of protection of even greater potential importance.” (Douglas J. Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Family Ct Act § 826, at 226 [1998].)
As a party may always request an adjournment, it is unclear why the legislature would require courts to grant a three-day adjournment regardless of when the temporary order of protection was served. Interpretation B recognizes that if served within 24 hours, respondent may not have had time to, for example, consult an attorney or determine whether respondent’s union provides legal services to respondent. If a respondent were served with a temporary order of protection three months ago, and appears on the return date requesting the statutory three-day adjournment, why must the court grant the three-day adjournment? Is it a reasonable request? Would respondent accomplish in three days what she/he has not accomplished in three months? The question of whether respondent’s request *428 for an adjournment is reasonable under the circumstances of that case is typically a determination the legislature has left to the courts.
Finally, interpretation B is consistent with service provisions for temporary orders of protection in other states. In recognition of the urgency in domestic violence cases, service provisions for orders of protection in other states do not set time limits. Indeed, Illinois allows expedited service. “The summons . . . shall be served by the sheriff or other law enforcement officer at the earliest time and shall take precedence over other summonses except those of a similar emergency nature.” (750 111 Comp Stat Ann 60/210 [c].) The time of service with regard to the return date does not affect the validity of the temporary order of protection.
Conclusion
If Ms. Pugh had threatened Mr. Grant again on August 18, 2008 after she had been served with the temporary order of protection, would she have violated the temporary order of protection? Under interpretation A, the answer is no. Under interpretation A, service within 24 hours of the return date would be ineffective rendering the temporary order of protection void and the court would have no jurisdiction. Interpretation B saves Family Court Act § 826 from this dangerous situation.
Ms. Pugh’s recourse was to appear in court and request an adjournment of at least three days to which she was entitled under Family Court Act § 826; lying about whether she was served and failing to appear when she was in the Family Court building that very day were not appropriate responses.
Accordingly, the court finds that Ms. Pugh was properly served on August 18, 2008, giving the court personal jurisdiction over Ms. Pugh. However, because she was served within 24 hours of the return date, she is entitled to a three-day adjournment. It is ordered that the final order of protection is vacated for 30 days from the date of this order. The temporary order of protection is reinstated. The court grants Ms. Pugh’s request for an adjournment, nunc pro tunc. Ms. Pugh may move by order to show cause with notice to Mr. Grant to set a date for trial on Mr. Grant’s family offense petition. If Ms. Pugh fails to so move within 30 days of the date of this order, the final order of protection shall be reinstated.

. On August 18, 2008, the court entered a final order of visitation for Mr. Grant with their son DG on default as well (V-18733/08). On October 7, 2008, Ms. Pugh filed a motion to vacate the order of visitation. Ms. Pugh appeared on November 12, 2008, the return date for her motion, but her affidavit of service of the motion to vacate was not complete. Both parties and the attorney for the child appeared on November 13, 2008 and stipulated to a visitation schedule. Ms. Pugh withdrew her motion regarding visitation. This decision will address the family offense petition only.

. The motion to vacate the order of protection was returnable on November 12, 2008 when Ms. Pugh appeared with an incomplete affidavit of service. Both parties appeared on November 13, 2008, but the file for 0-18732/08 could not be found. The parties agreed to adjourn the matter to December 12, 2008. The court directed the parties to bring all witnesses and evidence concerning service and to be prepared for a traverse hearing.

. In his family offense petition, Mr. Grant states that the incident occurred on August 8, 2008, at 10:30 A.M. However, court records show a proceeding was held in DG’s delinquency matter in Part 14 on August 7, 2008.

. In addition to the reports of the Committee, the court reviewed the transcripts of the legislative hearings, the Association of the Bar of the City of New York reports, the Report of the Joint Legislative Committee on Court Reorganization, No. 1, Judicial Administration of the Unified Court System (Jan. 30, 1962), the Report of the Joint Legislative Committee on Court Reorganization, No. 2, The Family Court Act (Jan. 30, 1962), and the Sixth Interim Report of the Joint Legislative Committee on Court Reorganization (Dec. 15, 1962).

. “Because a civil protection order is not enforceable until it has been served — and the intervening time can create serious danger of renewed or even increased violence — quick service is critical.” (Peter Finn and Sarah Col-son, Civil Protection Orders: Legislation, Current Court Practice, and Enforcement, at 60-61 [National Institute of Justice Mar. 1990].)

. The only reported case discussing Family Court Act § 826.

. “A preliminary injunction appears to be effective upon its issuance, and a party subject to the injunction is subject to the court’s contempt power once he or she has knowledge of the injunction, even if that person has not been served with the injunction. However, in the common situation in which the plaintiff obtained the temporary restraining order ex parte before the court has obtained personal jurisdiction over the defendants, a different rule appears applicable. In that circumstance, the parties to be restrained must be served with the appropriate process (i.e. summons and complaint, summons with notice or a petition) as provided in CPLR Article 3, before the temporary restraining order can be binding on them and before they can be subject to contempt for its violation.” (Weinstein-Korn-Miller, NY Civ Prac 1 6313.02 [4].)