In the Matter of the Estate of FRANK BUTTERWORTH, Deceased.*

Surrogate's Court, New York County, February 8, 1936.

*Frank T. Warburton*, for the executors.

DELEHANTY, S.  The personal claim of one of the executors has been satisfactorily proved and is allowed as scheduled.  A decree may be submitted settling the account and including such claim as a valid claim against the assets of deceased as such assets are now scheduled.

The form of the account presented in this estate discloses that in addition to paying the personal claim of one of the executors, to whom at the time of his death deceased was indebted on a collateral note, the executors paid similar claims made by three other banks.  The testimony elicited upon the hearing established that in each of the instances mentioned the respective bank held deceased's collateral note and that the collateral in each case was taken up by the executors by payment of the debt out of cash funds of the estate.  That collateral in each instance is listed at full value in Schedule A of this account as property of the estate and the amounts of the respective debts are listed as debts of the estate.  The effect of this method of accounting is to present a basis for charging commissions which requires comment.

Indebtedness of decedents to others than the estate representative may be paid by fiduciaries without previous court scrutiny.  In uncontested accountings this makes possible the concealed exaction of commissions not justly due if fiduciaries report their transactions

* See, also, 158 Misc. 480.

with respect to debts secured by collateral as these fiduciaries have done here. In the case of banks and trust companies this court has felt that it could assume that honesty of accounting would be the standard and not the exception and that such honesty of report would be the willing objective of the fiduciary, not the compelled result of the fear of a check by the court for improper practice. The trust officers of financial institutions authorized to act as fiduciaries are not ignorant of the law governing commissions. They could not be ignorant in view of the importance of the question to them and of the number of decided cases on the subject. When, therefore, there emanates from a corporate fiduciary an accounting which is designed to enable it to obtain commissions to which it is not entitled the facts should be noted and the practice severely condemned. The individual executor is open to criticism here as well as the corporate fiduciary.

In *Matter of Mercantile Trust Company* (210 N. Y. 83) the Court of Appeals said in unmistakable language that only the equity in the collateral pledged by a deceased to secure his debt is to be considered in the computation of commissions. That case was decided in 1913. Apparently a new generation of trust officers, blind or indifferent to this rule of law, attempted in 1926 a raid upon an estate similar to that attempted in the *Mercantile Trust* case and in *Farmers' Loan & Trust Co.* v. *Turner* (242 N. Y. 240) sought to defend a claim for commissions on the whole value of collateral deposited by deceased by the use of the scheme of paying the debt secured by collateral with cash from other estate funds and redeeming the collateral thereby. The court there said: " The plaintiff, as trustee, was entitled only to commissions on the testator's equity in the real or personal property received or paid out. It did not actually and in fact receive or pay out the amount of the mortgages. It is true that it did in form receive and pay out that amount but only in form. The testator at the time of his death did not own or have any interest in the real estate referred to, except his equity therein. The mortgages were owned and held by the trust company. It could not use the proceeds of the life insurance policy, augmented by contributions of the testator's children, to pay itself, and claim commissions thereon any more than it could, by taking sufficient of the proceeds of the purchase money received on the sale of the real estate, pay to itself a sum sufficient to discharge the incumbrances and claim commission therefor. *It would, it seems to me, be a travesty on justice to hold that, by shifting money from one pocket and putting it into the other, such act constituted receiving and paying out within the meaning of the statute.*" (Italics not in original.)

Apparently undeterred by this ruling a similar attempt was made in 1932 in *Matter of Mills* (149 Misc. 389, 391) to obtain commissions not due. In the case last cited the testator had obtained loans, secured by collateral, in amounts exceeding $350,000. They were unpaid when he died. The executors paid off the loans and took up the collateral. Each of them claimed commissions on the whole value of the collateral. Two per cent of $350,000 is $7,000. The executors both corporate and individual each made the attempt to collect this excess sum. They were defeated by the vigorous objection of the special guardian appointed by this court. They appealed to the Appellate Division which unanimously affirmed this court. A further appeal was allowed to the Court of Appeals and the single question involved in that last appeal was the question of allowance of commissions on the full value of the collateral thus redeemed. The Court of Appeals affirmed the lower court (263 N. Y. 574). Since 1932 then there has been no basis for an honest claim for commissions on the full value of property pledged by a deceased to secure his debt unpaid when he died.

Now, in the 1936 current business of this court, two corporate fiduciaries are discovered within a single week to have presented separate accounts in this court unwarrantably seeking commissions on the full value of collateral on pledge at the time of deceased's death. Discovery in each case was due to the accident that in each case a fiduciary had to secure court approval of his own claim.

To reach and defeat this dishonorable practice this court must make further rules which will compel adherence to that course of conduct which alone is honest and which has been clearly, explicitly and repeatedly laid down for fiduciaries by the authorities cited.

In this estate the collateral loans (disregarding interest) amounted to $34,000. There are two executors. The receiving and paying out commissions on $34,000 in an estate having a true capital in excess of $100,000 would amount to $680 for each executor and $1,360 for both executors. This is the sum by which even in such an estate the interests of the beneficiaries would be diminished by this method of accounting. Check-up of the account filed discloses that even after inclusion of the full value of the pledged collateral the estate principal accounted for is only $125,681.62. Conforming the account to honest accounting procedure and deducting the debts for which the collateral was pledged the true capital of this estate is found to be only $91,681.62. Only one commission is payable on this sum. By using the padded capital figure set forth in Schedule A of this account and thus getting into the class of estates over $100.000 these executors have worked out a basis for claiming

two commissions instead of one. The commissions claimed are $4,998.75. On an honest accounting the commissions for *both* executors amount only to $1,853.63. In other words, these executors have attempted to take from their *cestuis* $3,145.12 to which the executors have no legal right. Fiduciaries who in the past have secured decrees adjusting their accounts on schedules similarly concealing the facts and who thereby have profited at the expense of their *cestuis* toward whom they owed the most scrupulous fiduciary duty, may be confronted hereafter with a demand for reimbursement with legal interest. The Statute of Limitations in a case of fraud runs only from discovery of the fraud.

The decree settling this account will be signed only after an amended commissions schedule has been filed wherein the commissions are computed on the basis established by the cited authorities.