Joseph A. Cox, S.
In this proceeding to settle the executor’s account two questions have been raised as to the propriety of commissions claimed by the executor. The testator personally guaranteed a loan in the .sum of $160,000 made by Chemical Bank New York Trust Company to Cushion Pack, Inc., a corporation *781 in which the testator was interested. This guarantee was secured by collateral provided by the testator. After his death and upon the failure of Cushion Pack, Inc., to pay its debt, the bank satisfied the loan out of the collateral in its hands and assigned the corporation’s note to the executor. Eventually the executor collected the sum of $50,161.69 from Cushion Pack, Inc., as part payment on account of its note, leaving a balance of $109,838.31 still unpaid.
The executor may not compute commissions, either for receiving or for paying out, upon the securities which were sold to satisfy the testator’s obligation to the bank. The fact that the executor substituted collateral for that which the bank previously held does not alter the situation and the collateral resorted to by the bank cannot be regarded as either an asset of the estate, for the purpose of receiving commissions, or as a payment of a debt, for the purpose of obtaining paying out commissions. Neither may commissions be computed upon the uncollected balance of the note. In connection with this transaction the only commissions are those payable in respect of the sum of $50,161.69 collected by the executor upon the note (Matter of Mercantile Trust Co., 210 N. Y. 83; Farmers’ Loan & Trust Co. v. Turner, 242 N. Y. 240; Matter of Butterworth, 158 Misc. 477; Matter of Mills, 149 Misc. 389, affd. 239 App. Div. 817, affd. 263 N. Y. 574).
The testator was the owner of 50 shares of the capital stock of Bulkley, Dunton Pulp Co., Inc., which represented 50% of its issued and outstanding shares. On February 1,1958, some two years prior to his death, the testator entered into a purchase agreement with the corporation pursuant to which the corporation had the first option to purchase the stock from his estate. The price of the stock was fixed pursuant to a formula set forth in the agreement and the judgment of the executor was not required as to whether the stock should or should not be sold and as to the price at which it should be sold. It is assumed that, pursuant to the terms of the agreement, the corporation notified the executor that it was going to exercise its option to purchase the testator’s stock some 10 days or less prior to March 1, 1960, the date it paid for such stock.
During his lifetime the testator maintained a running loan account with Bulkley, Dunton Pulp Co., Inc., and at the time of his death was indebted to that corporation in the sum of $306,401.37. On February 29, 1960 the executor being satisfied with the validity of the corporation’s claim against the testator paid the claim out of the general assets of the estate. On March 1,1960 the day after the executor had paid $306,401.37 to Bulkley, *782 Dunton Pulp Co., Inc., it received from the corporation cash and securities totalling $2,177,859.74 in payment for the decedent’s stock in the corporation. The executor proposes to take receiving commissions on the full sum of $2,177,859:74 which was paid to it for the testator’s stock and also a paying out commission on the sum of $306,401.37 which the executor paid in satisfaction of the decedent’s debt to the corporation.
Although technically the executor went through the motions of paying out and receiving, it appears to this court that the rules of justice and equity require a different characterization of the transaction. On February 29, 1960, the day the executor paid the decedent’s debt to the corporation, it knew it was about to receive in excess of two million dollars from the same corporation on the very next day. Following normal business procedures it would have been much simpler and more natural to set off or credit the testator’s debt to the corporation against the amount to be collected from the corporation. How would the transaction have been handled if the estate did not have other assets out of which the testator’s debt could be satisfied? Under such circumstances the corporation would not have paid over two million dollars and not have deducted the debt due from the testator. Certainly the executor does not contend that it could borrow the money from outside sources in order to pay the testator’s debt for the sole purpose of preserving its claim to full receiving and paying out commissions. Yet, in effect, that is precisely what the executor did by failing to treat the debt as a setoff against the sales price of the stock.
The size of an estate is concededly an artificial measuring rod to determine the compensation to be paid to fiduciaries but the courts are agreed that in arriving at the size of an estate only the decedent’s net interest or equity in an asset is to be considered. In Matter of Lilienthal (83 N. Y. S. 2d 742) Surrogate Foley refused to allow commissions to executors on a sum which represented an indebtedness due from the decedent to a partnership in which he had a substantial interest, inasmuch as the debt constituted a setoff against the decedent’s partnership interest. A specific finding that commissions are payable only on a decedent’s equity in real or personal property received or paid out was made in Matter of Mercantile Trust Co. (210 N. Y. 83, supra) and of like import are Farmers’ Loan & Trust Co. v. Turner (242 N. Y. 240, supra); Matter of Butterworth (158 Misc. 477, supra); Matter of Mills (149 Misc. 389, affd. 239 App. Div. 817, affd. 263 N. Y. 574, supra) and Matter of Meyer (119 N. Y. S. 2d 737, 753). Perhaps the best statement covering the situation is found in Farmers’ Loan & Trust Co. v. Turner *783 (supra, p. 243) where the court said: “It would, it seems to me, be a travesty on justice to hold that, by shifting money from one pocket and putting it into the other, such act constituted receiving and paying out within the meaning of the statute.”
It is true that most of the cases cited above involved collateralized loans but the basic principle is the same. In this instance the testator’s equity in the corporation was the value of his stock in the corporation less any indebtedness that he owed to the corporation. Commissions are properly payable only on that equity. The executor is entitled to receiving commissions only on the sum of $1,871,458.37 and no paying out commissions on the debt paid to the corporation. The stated sum represents the testator’s true equity in the corporation.
The executor is directed to recompute its commissions in accordance with the foregoing rulings and to serve and file an amended Schedule K.
The stipulation settling the claim filed on behalf of the testator’s incompetent former wife is approved and the objections filed by the committee for the incompetent are marked withdrawn.