Evans V. Brewster, S.
The right of the executors to commissions on certain estate assets is the only matter in dispute in this accounting proceeding.
Decedent had been a member of a brokerage firm which in 1964 distributed to its partners certain cash and securities from its "Unclaimed Dividend Account”. The distribution was made on the advice of counsel that it did not violate any provisions of the Abandoned Property Law of the State of New York although the partners were made aware that a claim by the State was possible. Recognizing the possible claim that might be asserted by the beneficial owners as well *273 as by the State, the partners agreed to indemnify the firm against any "liability, loss or expense which might be imposed upon or suffered or incurred by said firm”.
On October 15, 1970, the Comptroller of the State of New York asserted a claim against the firm on account of this 1964 distribution stating that it should have been reported and delivered to the Comptroller pursuant to article V-A of the Abandoned Property Law. The claim was resisted by the firm on the grounds that it was protected against unknown claimants by the running of the Statute of Limitations and as against the Státe, on the grounds that the Abandoned Property Law, as it existed in 1964, did not by its terms apply to securities held for unknowns and that the 1965 amendment to cover securities held for unknowns was by its terms not retroactive.
Decedent died on November 6, 1970, just three weeks after the claim was first asserted. While no lawsuit was commenced, the attorneys for the partnership firm presented the arguments to resist the claim and conferred and negotiated with the Comptroller’s office. The claim was finally settled and by stipulation dated November 21, 1972, the partners who participated in the 1964 distribution agreed to pay the Comptroller their proportionate share of the distribution, plus interest, in full settlement of the claim asserted against the firm. Decedent’s share of the settlement was $134,143.99 and was paid by the executors on December 26, 1972. In addition, the executors paid $3,739 to the firm as expenses incurred in settling the claim. There are no objections to the payments of these items. Both of these sums are shown in Schedule C of the account and are included in the base for computing commissions. Before the settlement was made, however, the executors received from the firm on account of decedent’s partnership interest an amount in excess of $2,500,000. After the settlement was made, additional moneys were paid by the firm to the executors exceeding decedent’s share of the payment made to settle the claim.
The respondent objectants contend that commissions are payable only with respect to decedent’s equity in the partnership firm and since the executors’ payment pursuant to the 1964 indemnity agreement was in fact an obligation of the firm, the amount should have been set off against the value of decedent’s partnership interest in the firm. On the other hand, the executors claim they are entitled to commissions on *274 the total value of the partnership interest in the firm received and paid by them. They argue that the payment made by the executors in satisfaction of the claim of the Comptroller was a payment made to satisfy a personal debt of the decedent arising out of the indemnity agreement entered into between the decedent and the firm of which he was a partner and not a debt of the firm which would affect the value of decedent’s interest therein.
The cases cited by respondent objectants set forth the basic rule that commissions are properly payable only on decedent’s interest in an asset owned. In Matter of Enders (41 Misc 2d 780, 782-783) the cases are discussed and summarized by former Surrogate Cox as follows: "The size of an estate is concededly an artificial measuring rod to determine the compensation to be paid to fiduciaries but the courts are agreed that in arriving at the size of an estate only the decedent’s net interest or equity in an asset is to be considered. In Matter of Lilienthal (83 NYS2d 742) Surrogate Foley refused to allow commissions to executors on a sum which represented an indebtedness due from the decedent to a partnership in which he had a substantial interest, inasmuch as the debt constituted a setoff against the decedent’s partnership interest. A specific finding that commissions are payable only on a decedent’s equity in real or personal property received or paid out was made in Matter of Mercantile Trust Co. (210 NY 83, supra) and of like import are Farmers’ Loan & Trust Co. v Turner (242 NY 240, supra); Matter of Butterworth (158 Misc 477, supra); Matter of Mills (149 Misc 389, affd 239 App Div 817, affd 263 NY 574, supra) and Matter of Meyer (119 NYS2d 737, 753). Perhaps the best statement covering the situation is found in Farmers’ Loan & Trust Co. v Turner (supra, p 243) where the court said: 'It would, it seems to me, be a travesty on justice to hold that, by shifting money from one pocket and putting it into the other, such act constituted receiving and paying out within the meaning of the statute.’ ”
While there is no disagreement with the basic principle enunciated, it appears to this court that the cases cited are clearly distinguishable and have no application to the case at bar. In each of the cases referred to above, there was a fixed contractual obligation owed by the decedent at the time of his death for setoff against collateral pledged thereon or chargeable to the decedent’s interest.
The agreement signed by the decedent as one of the partici *275 pating partners of the firm in the 1964 distribution provided that he would "indemnify said firm and hold it harmless from and against any and all liability, loss or expense which may be imposed upon or suffered or incurred by said firm by reason of the aforesaid distribution of said stock and moneys or by reason of any claim or claims which may hereafter be made against said firm by or on behalf of the true beneficial owner or owners of said stock or by the State of New York.” No debt accrued or was incurred by the decedent to the partnership upon his receipt of the aforesaid distribution although the participants recognized that a possible personal liability existed which might be pursued at some future date. The preamble to the indemnity agreement set forth that the firm was advised by counsel that the claims to any stock by the beneficial owner or owners was barred by the Statute of Limitations even though it was possible for a claim to be made in the future. Applicability of the Abandoned Property Law to securities held for unknown persons as of that date was also questionable. These possibilities of a lawsuit at some future date did not deter the partnership members from taking the fruits of this distribution into their own possession. While it might appear that the claim instituted by the State was initially against the partnership, the stipulation of settlement is between the Comptroller, as one party, and the firm and participants, described as certain partners, former partners and nine legal representatives of deceased partners, as the other party. The settlement sets forth in the schedule the respective obligations of the participants, the aggregate amount of which is the total settlement. Furthermore, the Comptroller agreed to accept in full payment each participant’s check, to be collected and guaranteed by the firm.
Considering the foregoing, it appears that the participants in the distribution at the very outset considered their personal possible liability as an individual matter outside of and apart from the firm. It was the settlement agreement that transformed the claim of the State to a debt of the estate of decedent. The debt was, however, directly attributable to the property received by decedent in 1964. The firm, regardless of the number of changes in partners since 1964, may have been liable to the State in a lawsuit (see Partnership Law, §§ 25, 26), but the debt itself was the debt of the individuals who participated in the 1964 distribution and not a matter to be set off against the decedent’s partnership interest. The ex *276 penses incurred in settlement of the claim expressly covered by the indemnity agreement and are directly attributable to the 1964 distribution, and as such not subject to setoff against the decedent’s partnership interest.
Accordingly, the objections with respect to the allowance of commissions as computed are dismissed.